## Commonwealth *v.* Field, Appellant.

54

Argued March 22, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Donald J. Goldberg,* with him *Louis Lipschitz,* for appellant.

*James T. Ranney,* Assistant District Attorney, with him *David Richman,* Assistant District Attorney, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., September 23, 1974:

This is an appeal from judgments of sentence entered after a jury trial in which the appellant was convicted on 26 separate indictments charging him with violations of The Pennsylvania Securities Act,[1] and three indictments charging him with fraudulent practices and fraudulent conversion in connection with stock. Motions in arrest of judgment were granted by the court below on one of the Securities Act violations and on all three of the fraud convictions. On the remaining 25 convictions, the appellant was sentenced to pay a fine of $1,000 on each conviction, and from these sentences he appeals.

For the reasons stated hereinafter, we find it unnecessary to examine the merits of the case against appellant and rule that all indictments in this case must be quashed.

In 1969, the District Attorney of Philadelphia petitioned the court to convene a Special Investigating Grand Jury to examine "widespread corruption, malfeasance, fraud, bribery, extortion, blackmail and other criminal activity in the operation of various public offices, departments, boards, commissions, authorities and agencies involved in the City of Philadelphia's urban renewal efforts . . . ."[2] The appellant, Sander Field, a member of the City Planning Commission and Chairman of the Board of Directors of Citizens Bank of Philadelphia, was called to testify before this grand jury in April of 1969. His testimony concerned three areas not hereunder consideration and an alleged "series of fraudulent stock dealings . . . to the detriment of the shareholders of Citizens Bank."[3]

---

[1] Act of June 24, 1939, P. L. 748, §§1 et seq., as amended, 70 P.S. §§31 et seq., repealed, Act of December 5, 1972, P. L. 1280, No. 284, 70 P.S. §1-101 et seq. (Supp. 1974-75).

[2] "Petition for a Grand Jury Investigation," Record at 3a, 4a.

[3] "Sixth Presentment" of the Grand Jury. Record at 108a.

Prior to his testimony, the appellant was brought before Judge SLOANE for the administration of oath and at this time he was not advised of his rights before the grand jury as required by the Court in the decision in *Commonwealth v. McCloskey*, 443 Pa. 117, 277 A.2d 764, *cert. denied*, 404 U.S. 1000 (1971). The appellant contends that this failure to advise him of his rights requires that the indictments against him be quashed. The Commonwealth, on the other hand, argues that the testimony of the appellant did not contribute to the grand jury presentment; and therefore, under the *McCloskey* decision the indictments remain valid.

The Court in *Commonwealth v. McCloskey*, supra, in speaking of a witness's right to exercise his privilege against self-incrimination knowingly and intelligently, set forth the following rule: "[W]e believe that proper procedure is for the court supervising the investigating grand jury to instruct a witness when administering the oath that while he may consult with counsel prior to and after his appearance, he cannot consult with counsel while he is giving testimony. However, the witness should also be informed that should a problem arise while he is being interrogated, or should he be doubtful as to whether he can properly refuse to answer a particular question, the witness can come before the court accompanied by counsel and obtain a ruling as to whether he should answer the question." *Id.* at 143, 277 A.2d at 777.

The Court stated as the proper remedy: "[T]hose indictments in any way based upon a defendant's own testimony given without this warning and in violation of his right against self incrimination must be quashed." *Id.* at 120, 277 A.2d at 766.

Our decision in this case turns upon an interpretation of the language "in any way based." The Commonwealth would have this phrase read narrowly to require a direct causal connection between the testimony

and the indictment before the indictment would be quashed. The appellant asserts that "in any way" comprehends any connection, influence, or relationship between the indictment and the impermissible testimony. Although we choose not to interpret the language as broadly as the appellant, history demonstrates that his interpretation is more nearly correct than that of the Commonwealth.

We must recognize that we deal with the clash of two principles deeply rooted in and vastly important to our system of jurisprudence. "The grand jury is well known to Anglo-American criminal justice as the people's guardian of fairness . . . ." *In Re Subpoena to Nixon,* 360 F. Supp. 1, 9 (D.C. D.C. 1974), *aff'd in part sub nom. Nixon v. Sirica,* 487 F.2d 700 (D.C. Cir. 1973). "It is a grand inquest, a body with powers of investigation and inquisition . . . ," *Blair v. United States,* 250 U.S. 273, 282 (1919), which has "served for centuries both as a body of accusers sworn to discover and present for trial persons suspected of criminal wrongdoing and as a protector of citizens against arbitrary and oppressive governmental action." *United States v. Calandra,* 414 U.S. 338, 343, 38 L.Ed. 2d 561, 568 (1974).

The use of the investigative grand jury serves as an alternative for the normal methods of commencing a criminal action;[4] and, because this alternative dispenses with the procedural protections of a preliminary arraignment and preliminary hearing, the power in Pennsylvania to convene an investigating grand jury "is a most delicate one, [which] is never exercised unless under urgent necessity or . . . [where] the public would suffer from the delays incident to ordinary forms of law." *McNair's Petition,* 324 Pa. 48, 60, 187 A. 498, 504

---

[4] *See generally* Address by the Hon. John C. Bell, District Attorney of Philadelphia, "The Several Modes of Instituting Criminal Proceedings in Pennsylvania," 13 Pa. Dist. 815 (1904).

(1936). It may be called to investigate "matters of general public import, which, from their nature and operation in the entire community, justify such intervention . . . . Such as great riots that shake the social fabric, carrying terror and dismay among the citizens; general public nuisances affecting the public health and comfort; multiplied and flagrant vices tending to debauch and corrupt the public morals, and the like." *Lloyd & Carpenter's Case,* 5 Pa. L.J. 55, 59, 3 Clark 188, 192 (Ct. of Qtr. Sess. of Phila. 1845).

Once the concerns of society justify the convening of an investigating grand jury, it is given broad investigative power with which to adequately discharge its public responsibility. *Branzburg v. Hayes,* 408 U.S. 665 (1972). "When the grand jury is performing its investigatory function into a general problem area, . . . society's interest is best served by a thorough and extensive investigation . . . ." *Wood v. Georgia,* 370 U.S. 375, 392 (1962). These "broad investigative powers to determine whether a crime has been committed and who has committed it," *United States v. Dionisio,* 410 U.S. 1, 15 (1973), "[serve] identifiable and legitimate state interests." *Commonwealth v. McCloskey,* supra at 137, 277 A.2d at 774.

Society's need for the extraordinary remedy of the investigating grand jury gives rise to the well established premise that "the grand jury has a right to every man's evidence . . . ." *In Re Subpoena to Nixon,* supra at 6. "To this end it must call witnesses, in the manner best suited to perform its task." *Branzburg v. Hayes,* supra at 701. The duty of citizens to appear and testify before the grand jury has long been recognized as a basic obligation that every citizen owes to his government. *See, e.g., United States v. Bryan,* 339 U.S. 323 (1950). It has been regarded as " 'so necessary to the administration of justice' that the witness's personal interest in privacy must yield to the public's overriding

interest in full disclosure." *United States v. Calandra,* supra at 346, 38 L.Ed. 2d at 570 (1974). To effectuate the grand jury's right to evidence, the courts have an affirmative duty to "summon, swear, and send before the grand jury, such witnesses as they may deem necessary to a full investigation of the evils intimated, in order to enable the grand jury to present the offence and offenders." *Lloyd & Carpenter's Case,* supra at 59, 3 Clark at 192.

Balanced against this fundamental governmental role of "securing the safety of the person and property of the citizen," *Branzburg v. Hayes,* supra at 700, must necessarily be the basic right enshrined in our Constitution that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." This "precious [right] . . . fixed in our Constitution only after centuries of persecution and struggle," *Miranda v. Arizona,* 384 U.S. 436, 442 (1966), was secured "for ages to come, and . . . designed to approach immortality as nearly as human institutions can approach it." *Cohens v. Virginia,* 6 Wheat. 264, 387 (1821), quoted in *Miranda v. Arizona,* supra at 442.

The Pennsylvania Supreme Court recently reaffirmed that "a witness before a grand jury is always protected by the privilege against self incrimination . . . ." *Commonwealth v. McCloskey,* supra at 142, 277 A.2d at 777. The privilege is available "in investigations as well as in prosecutions." *In Re Groban's Petition,* 352 U.S. 330, 333 (1957). A grand jury may override a fifth amendment claim only if the witness is granted immunity coextensive with the privilege against self-incrimination, *Kastigar v. United States,* 406 U.S. 441 (1972); otherwise it "may not force a witness to answer questions in violation of that constitutional guarantee." *United States v. Calandra,* supra at 346, 38 L.Ed. 2d at 570.

---

[5] U.S. Const. amend. V.

It was upon these historical and constitutional foundations that our Supreme Court structured its decision in *Commonwealth v. McCloskey*, supra. The warning required "gives full recognition to the delicate position of a witness before an investigating grand jury. He has been summoned to testify, and he is subject to contempt proceedings should he refuse to testify without justification. The question of when a witness has 'reasonable cause to apprehend danger' and hence can exercise his right against self incrimination is not always clear. As was stated in Jones v. United States, 342 F.2d 863 (D.C. Cir. 1964) : 'If . . . [a witness] answers incriminating questions he may make certain . . . that he will be indicted. And testimony before the grand jury may be used . . . to impeach his testimony at trial. If he refuses to testify at all, or to answer some questions on the ground that answers might incriminate him, the grand jury may draw conclusions. If he refuses to answer questions that are not incriminating, he may be guilty of contempt.'

"Determining what is an incriminating statement is not always clear to a layman. We thus conclude that a subpoenaed witness who has given testimony before an investigating grand jury without the above warning has been denied his right against self incrimination." *Commonwealth v. McCloskey*, supra at 143-44, 277 A.2d at 777-78 (footnotes and citations omitted).

After considering the history of the extraordinary power of the investigating grand jury and the importance of the fifth amendment privilege which "is so fundamental to our system of constitutional rule", *Miranda v. Arizona*, supra at 468, we conclude that the Court in *McCloskey* did not intend that the causal connection between a defendant's testimony and a subsequent indictment be so strictly interpreted as the court below required. We deal with conflicting principles of the highest order; on the one hand the efficient administra-

tion of justice, on the other that justice be administered fairly. In this context balancing the one against the other the courts have universally held that the fifth amendment privilege must be considered paramount.[6]

In this case, a reading of the transcripts of the appellant's testimony before the grand jury convinces us that his testimony did contribute to the grand jury's evaluation of the case. It is true, as the Commonwealth argues, that the grand jury based its presentment upon subpoenaed bank records and testimony of witnesses other than the appellant, but we cannot agree that this was the sole basis. The *McCloskey* rule states that if the indictments are "in any way based" upon the impermissible testimony they must be quashed. We cannot interpret this rule to require that the grand jury must quote a witness's testimony or state in the presentment that the testimony supplied the basis for the charge. Where it appears that testimony given in the absence of the warnings influenced the decision, the "in any way based" standard of *McCloskey* has been satisfied.

In this case, the appellant, under close questioning, testified at length concerning his connection with Citizens Bank, as to the ownership of its stock and as to certain transactions in the bank's stock. He admitted and described in detail his participation in one particular stock transaction typical of those for which he was later presented and indicted. The presentment states that "Mr. Field quickly felt the heat he had generated once this Grand Jury came into being." "Mr. Field became an inscrutable, recalcitrant and untruthful wit-

---

[6] *See, e.g., United States v. Calandra*, 414 U.S. 338 (1974) ; *In Re Subpoena to Nixon*, 360 F. Supp. 1, 10 (D.C. D.C.) ("nor can anyone, regardless of his station, withhold from it evidence *not privileged.*") (emphasis added) *aff'd in part sub nom. Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973) ; *see generally* Annot., Self Incrimination Before a Grand Jury, 38 A.L.R. 2d 225 (1954).

ness . . . ."[7] Upon an examination of the grand jury testimony and the presentment, we cannot say that the indictment was not "in any way" influenced by the testimony of the appellant.[8]

Additionally, we note that the Commonwealth offers no argument that the subsequent evidence was arrived at by a source sufficiently distinguishable from appellant's wrongfully obtained testimony. Although the exclusionary rule may not apply to grand jury proceedings, *United States v. Calandra,* supra, that rule is unrelated to the present factual situation. The fifth amendment privilege does apply to grand jury proceedings and the grand jury may not itself violate a valid privilege whether established by the Constitution, statutes or common law. *Branzburg v. Hayes,* supra. Where there has been a showing of primary illegality the prosecution must establish that the taint did not infect the other evidence. *Commonwealth v. Cephas,* 447 Pa. 500, 291 A.2d 106 (1972) ; *Commonwealth v. Marabel,* 445 Pa. 435, 283 A.2d 285 (1971).

Upon review of the history of the grand jury proceedings and the fundamental privilege against self-incrimination, "[i]n seeking to balance society's interest in the grand jury's freedom of orderly inquiry and a

---

[7] The presentment further states: "who . . . suffered a highly suspicious 'heart attack' which terminated his testimony . . . . We note that, whether or not Mr. Field's 'heart attack' was feigned—and from the medical testimony we heard we believe it was—he had long ago returned to his daily business pursuits and could now testify were he willing to cooperate." Record at 99a-100a.

[8] We also note that less than half of the testimony of the appellant before the Grand Jury is available for review by this Court. The extent to which those additional volumes would show that the indictments were based in part on the testimony remains only speculation. That speculation redounds to the benefit of the appellant. *See, e.g., Commonwealth v. DeSimone,* 447 Pa. 380, 290 A.2d 93 (1972) ; cf. *Commonwealth v. Goldsmith,* 452 Pa. 22, 304 A.2d 93 (1973).

witness's right to exercise his privilege against self incrimination knowingly and intelligently," *Commonwealth v. McCloskey,* supra at 143, 277 A.2d at 777, we conclude that the *McCloskey* rule is to be interpreted broadly as a remedial rule[9] and that the evidence in this case satisfies the "in any way based" language of *McCloskey.*

. For the foregoing reasons, judgments of sentence vacated and indictments quashed.

---

[9] Our Supreme Court has recently reaffirmed the *McCloskey* decision and its constitutional underpinnings in *Commonwealth v. Columbia Inv. Corp.,* 457 Pa. 353, 325 A.2d 289 (1974). The Court stated: "The right against self-incrimination guaranteed by the Fifth Amendment and Article I, Section 9 of the Pennsylvania Constitution, as implemented through this Court's McCloskey decision provides ample protection to one giving testimony before an investigating grand jury.

. . . .

". . . [I]f one testifying before a grand jury is uncertain of the propriety of refusing to answer a particular question . . . [he may] leave the grand jury room and with his counsel appear before the supervising judge. . . . Our system maintains close liaison between supervising judge, grand jury witnesses, and counsel.

"The McCloskey regimen consequently provides the grand jury witness with greater protection than does the New York system. In Pennsylvania, not only may the doubtful witness consult with counsel, but he is entitled to a preliminary ruling by the supervising judge on the merits of a claim of privilege. Both the rights of the witness and the need for adequate judicial supervision of the investigating grand jury are protected." *Id.* at 370-371, 325 A.2d at 298.

The *McCloskey* decision is applicable to the instant case. *See Commonwealth v. Cohen,* 221 Pa. Superior Ct. 244, 289 A.2d 96, *allocatur refused,* 221 Pa. Superior Ct. xliv (1971), *cert. denied,* 409 U.S. 981 (1972).