Hillsborough
No. 7339

### STATE OF NEW HAMPSHIRE

v.

### WILLIAM E. GOSSELIN

February 28, 1977

116

*James E. Duggan,* public defender, *Craig, Wenners, Craig & McDowell,* of Manchester, and *Theodore H. Parent (Mr. Parent* orally) for the defendant.

*David H. Souter,* attorney general, and *Gregory H. Smith,* assistant attorney general (*Mr. Smith* orally) for the state.

LAMPRON, J. After trial by jury, defendant was found guilty of possession of a gun by a felon, RSA 159:3 (Supp. 1975). Subsequently a sentence of nine to thirty years at the state prison was imposed pursuant to the extended term of imprisonment provisions of RSA 651:6.

The issues presented on this appeal are the propriety of the denial by the Trial Court (*Flynn,* J.) of defendant's pretrial motions to dismiss the indictment on the grounds of double jeopardy and to suppress certain evidence and statements, and the sentencing of defendant under RSA 651:6. We approve these actions of the trial court.

On the morning of January 9, 1975, two Portsmouth detectives came to the Manchester police station with arrest warrants for defendant and for his girlfriend. The warrant for defendant involved a charge of theft of a motor vehicle by unauthorized taking.

Manchester police officers then went to the apartment where defendant and his girlfriend were believed to be living. The girlfriend permitted a search of the apartment and an empty box for a .357 Magnum Sentinel revolver was found. She told the police that defendant was out walking around and that she thought he had the gun in his possession. She also told the officers that defendant may have been under the influence of drugs.

A "pick-up" was then put out for defendant. At about 1:20 p.m. that day defendant walked into the Manchester police station and asked the officer on duty, Officer Holmes, what the detectives wanted to see him about. Holmes walked with defendant towards some stairs heading to the detective room, then informed defendant that he had information defendant was carrying a gun and that he intended to search him. Defendant pushed Holmes' hand away. Detective Denton, who was coming down the stairs, joined Officer Holmes and removed a loaded .357 Magnum Sentinel revolver from the left front waistband of defendant's pants.

Defendant was then questioned by Detective Denton, who first informed him of his rights. At approximately 5:30 p.m., defendant was further questioned by Detective Craig of the Manchester police department. Craig testified that he also advised defendant of his rights once, at the beginning of his questioning. This questioning lasted two to two-and-one-half hours. Statements made to Detective Craig during this time were used against defendant at trial.

As a result of carrying the loaded revolver concealed on his person, defendant was charged with carrying a gun without a license in violation of RSA 159:4 (Supp. 1975), a misdemeanor. He was also charged with being a felon in possession of a revolver in violation of RSA 159:3 (Supp. 1975), a felony. On February 26, 1975, defendant pleaded guilty in the Manchester District Court to the charge of carrying a gun without a license. He was sentenced to sixty days in the Hillsborough County House of Corrections. No appeal was taken. Defendant was bound over to the superior court pending grand jury consideration of the felony charge. RSA 502-A:13. The grand jury subsequently entered the indictment against defendant on which he was found guilty and which is the subject of this appeal.

I. *Double Jeopardy*

 The offenses charged under RSA 159:3 (Supp. 1975) and RSA 159:4 (Supp. 1975) are not identical. Proof of different ele-

ments are necessary for convictions under each. Proof that the gun is loaded and concealed is necessary for conviction under the latter but not the former; proof that the individual is a convicted felon is necessary for conviction under the former but not the latter. *State v. Hoyt,* 114 N.H. 256, 319 A.2d 286 (1974). However, defendant argues that because the two charges concern defendant's possession of the same gun at the same time in the same incident, the indictment and trial on the second charge violated his right not to be twice put in jeopardy for the same offense.

■■ This court has consistently held that the protection afforded by the double jeopardy clauses of the fifth amendment to the United States Constitution and by part I, article 16 of the New Hampshire Constitution does not prevent the threat of twice being punished for the same act, but rather, forbids twice being tried and convicted for the same offense. *State v. Gendron,* 80 N.H. 394, 118 A. 814 (1922); *State v. Smith,* 98 N.H. 149, 95 A.2d 789 (1953); *State v. Goodwin,* 116 N.H. 37, 351 A.2d 59 (1976). This doctrine is effectuated by means of the "same evidence" test of the identity of offenses. If a difference in evidence is required to sustain the offenses charged, the fact that they relate to and grow out of one transaction does not make them a single offense when two or more are defined by statutes. *Blockburger v. United States,* 284 U.S. 299, 304 (1932); *Gore v. United States,* 357 U.S. 386, 388 (1958); *State v. Harlan,* 103 N.H. 31, 164 A.2d 562 (1960).

Defendant maintains, however, that the words "same crime or offense", N.H. CONST. pt. I, art. 16, and "same offence", U.S. CONST. amend. V, because of their plain language, as well as sound policy reasons, compel this court to adopt the "same transaction" test of double jeopardy. This test "looks to a person's behavior rather than to statutory definitions, and treats the consequences of the same transaction, episode, or conduct as constituting one offense for the purposes of a double jeopardy plea, although such consequences may be in violation of more than one criminal statute." *State v. Ahuna,* 52 Haw. 321, 324, 474 P.2d 704, 706 (1970). It requires the prosecution "to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction." *Ashe v. Swenson,* 397 U.S. 436, 453–54 (1970) (Brennan, J., concurring); *Duncan v. Tennessee,* 405 U.S. 127, 132 (1972) (Brennan, J., dissenting). Such a test is said to promote justice, economy, and convenience, and prevent harass-

ment of a defendant. *Ashe v. Swenson*, 397 U.S. at 454; *People v. White*, 390 Mich. 245, 259, 212 N.W.2d 222, 225 (1973).

 We do not find defendant's arguments compelling. Our present criminal court system with its differences in jurisdiction and lack of unified prosecution is ill adapted to compulsory joinder of multiple statutory violations which might arise out of the "same transaction." *See State v. Brown*, 262 Ore. 442, 457, 497 P.2d 1191, 1199 (1972). Any abuse by prosecutors in harassing defendants could be remedied by the trial court in any particular case, *State v. Lordan*, 116 N.H. 479, 363 A.2d 201 (1976); *State v. Bergeron*, 115 N.H. 70, 333 A.2d 721 (1975), and by the adoption of court rules requiring joinder of criminal charges in cases such as this. *See People v. White*, 390 Mich. 245, 263, 212 N.W.2d 222, 230 (1973) (dissenting opinion). *See also* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance § 1.3 (Approved Draft, 1968).

Furthermore a single course of criminal conduct may involve violations of different statutes with differences in acts performed, means of perpetration and intent. It may be just as difficult in some cases to determine whether the wrongful course of conduct constitutes a single criminal transaction as it is to determine whether conduct involving separate statutory violations amounts to the same offense. *See Whitton v. State*, 479 P.2d 302, 307 (Alaska 1970). We see no compelling reason to change from our present "same evidence" test, and we hold that defendant's motion to dismiss the indictment on grounds of double jeopardy was properly denied.

II. *Denial of Motion to Suppress the Revolver Seized from Defendant.*

Defendant argues that the seizure of the revolver from his person was unlawful because the search resulted from his having been placed under arrest without probable cause. Prior to the time defendant walked into the Manchester police station, Detective Denton had been told by defendant's girlfriend that defendant was carrying a revolver. She had also told Detective Denton that she thought defendant might use the gun if approached by a police officer. It was on the basis of this information as well as the arrest warrant of the Portsmouth detectives that Detective Denton had ordered broadcast the "pick-up" for defendant which included a warning that defendant was probably armed. Officer Holmes did

not immediately recognize defendant as the subject of the "pick-up" which he had broadcast earlier. However when Officer Holmes telephoned upstairs to Detective Denton, he was told by him that defendant was the subject of the "pick-up", and that he should check defendant for a revolver.

▇ Detective Denton could have had defendant placed under arrest on the charge of theft by unauthorized taking, based on the arrest warrant of the Portsmouth detectives. RSA 594:9. He did not do this, but told Officer Holmes to book defendant "for investigation." However, because of the outstanding warrant, Detective Denton could have at least had reason to suspect that defendant had committed a crime, and on that basis could order his detention. RSA 594:2. Detective Denton also had reason to believe that defendant was in possession of a revolver and might use it on a police officer. He could therefore properly order that a limited search for the revolver be conducted of defendant. RSA 594:3; *Adams v. Williams,* 407 U.S. 143 (1972); *Terry v. Ohio,* 392 U.S. 1 (1968). It was not necessary that Detective Denton be the officer who detained or searched defendant. *See State v. Brodhead,* 116 N.H. 39, 351 A.2d 57 (1976). Under the circumstances, therefore, the search of defendant conducted by both Officer Holmes and Detective Denton was reasonable. The seizure of the revolver was not unlawful and defendant's motion to suppress it was properly denied.

III. *Denial of Motion to Suppress Defendant's Statements.*

▇ Defendant contends that because the state failed to prove a valid waiver by defendant of his fifth and sixth amendment rights, statements made by defendant to Detective Craig should have been excluded from trial. However, the only statement introduced at trial was an admission by defendant that he was carrying a gun. Both Officer Holmes and Detective Denton had already testified that defendant had been carrying the revolver which Detective Denton had seized. The introduction of defendant's statement was therefore merely cumulative. In view of this other, uncontroverted evidence, any error in denying defendant's pretrial motion to suppress the statements was harmless beyond a reasonable doubt. *Milton v. Wainwright,* 407 U.S. 371 (1972); *Chapman v. California,* 386 U.S. 18 (1967); *Koonce v. State,* 323 N.E.2d 219 (Ind.

1975); *see State v. Bell*, 112 N.H. 444, 298 A.2d 753 (1972); *State v. Underwood*, 110 N.H. 413, 270 A.2d 599 (1970).

### IV. *Sentencing Under RSA 651: 6 I(c)*.

Defendant, who was more than twenty-one years of age, was sentenced to an extended term of imprisonment on the ground that he had twice previously been imprisoned on sentences in excess of one year. RSA 651:6 I(c). At the sentencing hearing, conducted three weeks after the trial, the state called as a witness Armel J. Couture, defendant's parole officer since January 24, 1974. Through Mr. Couture the state introduced evidence that defendant had twice previously been imprisoned at the state prison on sentences in excess of one year. No other evidence was introduced with respect to the state's motion for an extended term of imprisonment.

On appeal defendant presents three objections to the sentencing, all of which were duly raised below. Defendant's first objection is that the state failed to show that he was represented by counsel at the time of the prior convictions. Prior convictions obtained when a defendant was not represented by counsel and had not knowingly and intelligently waived his right to counsel cannot be used as the basis for an enhanced sentence. *United States v. Tucker*, 404 U.S. 443 (1972); *Burgett v. Texas*, 389 U.S. 109 (1967). If it were evident from the record, or if defendant had presented evidence which placed in dispute the question of whether he had been represented by counsel, the burden would then have been upon the state to prove representation by counsel or a knowing and intelligent waiver of that right. *Boykin v. Alabama*, 395 U.S. 238 (1969); *State v. Maxwell*, 115 N.H. 363, 341 A.2d 766 (1975); *State v. Herbert*, 108 N.H. 332, 235 A.2d 524 (1967). However, unlike the prior convictions used in *Burgett v. Texas supra*, there was nothing which raised the presumption of lack of counsel in defendant's prior convictions. In fact, records of one of the prior convictions which had been introduced at defendant's trial, before the same presiding judge, contained evidence of representation by counsel. At the sentencing hearing, defendant did not present any evidence or testimony to show he was not represented by counsel at the time of this or any other previous conviction on which the enhanced sentencing was based. He did not even allege that he had not been represented by counsel, but simply argued that the state had not met its burden of proof. In this context,

where nothing in the record raised the presumption of either lack of counsel or an invalid waiver of that right, it was incumbent on defendant, not the state, to go forward with evidence which would have put in issue the question of whether he had previously been represented by counsel. *State v. Cameron,* 167 N.W.2d 689, 694 (Iowa 1969).

■ Defendant's second objection to the sentencing is that there was insufficient evidence to prove defendant was the same William Gosselin who had previously been imprisoned on sentences in excess of one year. The identity of defendant with the William Gosselin who had previously been convicted and imprisoned was "a question of fact for the trial court whose finding will be sustained if supported by the evidence." *State v. Miller,* 102 N.H. 260, 263, 154 A.2d 699, 701 (1959). The various records from the state prison and parole board on which Mr. Couture based his testimony included a photograph of defendant and his date of birth, as well as his name. Through correlation of all these documents there was sufficient evidence on which the court could have based its finding that defendant was the same individual who had previously been imprisoned.

Defendant's third objection to the sentencing is that Mr. Couture, a parole officer, should not have been permitted to testify as to prior convictions of defendant. Defendant argues that only the proper custodian of records of conviction, such as a clerk of the superior court, should have been permitted to introduce such testimony.

■ Imposition of an extended term of imprisonment under RSA 651:6 I(c) is dependent on proof of previous periods of imprisonment. Proof of prior convictions will not be sufficient, although it may be presumed that prior prison terms were preceded by convictions. Mr. Couture did not in fact testify as to previous convictions of defendant.

■ Mr. Couture testified that he had custody of the records of both the state prison and the parole board concerning defendant. Although defendant objected to Mr. Couture's testimony based on the commitment orders, he did not object on the grounds that Mr. Couture was not a proper custodian of these papers. We also note that, under RSA 622:9, whenever a person is sentenced to the prison a copy of the conviction, judgment and order are deliv-

ered to the warden of the prison. The trial court properly allowed Mr. Couture to testify from the commitment orders. Mr. Couture's status as custodian of the other prison and parole board records was also not challenged. His testimony was therefore proper. *See* RSA 521:1, :2; *United States v. Locke,* 425 F.2d 313 (5th Cir. 1970); 7 J. Wigmore, Evidence §§ 2158–59 (3d ed. 1940).

*Exceptions overruled.*

DOUGLAS, J., did not sit; the others concurred.