470 A.2d 532

**COMMONWEALTH of Pennsylvania**

**v.**

**Regina K. WEBSTER, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 3, 1983.

Filed Dec. 9, 1983.

Reargument Denied Feb. 13, 1984.

Petition for Allowance of Appeal Denied July 11, 1984.

Peter T. Campana, Williamsport, for appellant.

Ellen L. Cohen, Assistant District Attorney, Williamsport, for Commonwealth, appellee.

Before WIEAND, McEWEN and MONTGOMERY, JJ.

WIEAND, Judge:

Regina Webster was tried by jury and found guilty of delivering 6.65 grams of cocaine to an undercover state policeman on November 5, 1981. On direct appeal from the judgment of sentence, she contends that she is entitled to an arrest of judgment because she was granted immunity by the courts of New York when she appeared in that state to give testimony concerning other drug transactions before a Steuben County Grand Jury. In separate appeals, she contends that the trial court erred when it refused to dismiss two additional informations charging her with (1) conspiracy and attempt to deliver six hundred pounds of marijuana on December 21, 1980 and (2) possession with intent to deliver a quantity of marijuana found in her home

pursuant to a search conducted by police on December 22, 1980. She contends that a separate trial on these informations will violate Section 110 of the Crimes Code, 18 Pa.C.S. § 110, and principles of double jeopardy. Both appeals were consolidated for purposes of argument.

On November 5, 1980, the Pennsylvania State Police were informed by the New York State Police that information had been acquired as a result of an authorized wiretap on a New York telephone to the effect that a quantity of cocaine was to be delivered by a New York resident to Curtis Missien, 929 High Street, Williamsport, Pennsylvania. Trooper Donald K. Jury of the Pennsylvania State Police made an undercover visit to Missien's home the same day. There he found Regina Webster, who was living with Missien, and discussed with her the possibility of making future drug purchases. On that occasion, according to the evidence produced at trial, Jury purchased 6.65 grams of cocaine from Regina Webster. Although Jury had additional discussions with Ms. Webster thereafter, and also with Missien, no additional purchases of cocaine were made. This may have been due in part to the arrest in New York of Robert Bavisotta, who was suspected of being the New York supplier of Missien and Webster.

On December 17, 1980, Trooper Jury was again in Regina Webster's home, where he discussed with her the purchase of a large quantity of marijuana. On this occasion, he observed an estimated twenty-four pounds of marijuana and was present when Webster sold marijuana to an unidentified third person. Webster arranged for Jury to meet with one Alfred Rowe, whom Webster represented to be her source for marijuana, on December 21, 1980. After Jury had visited the site where a large quantity of marijuana was stored and had made arrangements to purchase the marijuana, an arrest was made of Webster, Rowe and Rowe's wife. A search of the home shared by Webster and Missien, conducted pursuant to warrant on the morning of December 22, 1980, resulted in the finding and seizure of

the twenty-four pounds of marijuana seen earlier by Trooper Jury.

Regina Webster was initially named as defendant in two criminal complaints. The first charged her with possession and delivery of cocaine on November 5, 1980. The second complaint alleged a conspiracy to deliver and an attempt to deliver six hundred pounds of marijuana to Trooper Jury on December 21, 1980. Later, on January 14, 1981, appellant was also charged with possession and possession with intent to deliver the marijuana found in her home on December 22.

On March 27, 1981, Regina Webster appeared in New York before a Steuben County Grand Jury and, pursuant to a grant of transactional immunity by the New York court, answered questions pertaining to the purchase of drugs from Robert Bavisotta on November 4 and November 9, 1980. She was not asked and did not give testimony concerning her sale of cocaine to Trooper Jury on November 5.

In Pennsylvania, the several charges against Regina Webster were returned to court and were included in three separate informations. Omnibus pre-trial motions were filed and included (1) a motion to dismiss because of immunity granted in New York and (2) a motion to consolidate all charges for trial. On July 31, 1981, the trial court denied the motion to dismiss. It also denied the application to consolidate in one trial all charges against Webster. Instead, the court granted a prosecution request to consolidate in separate trials the charges against all defendants involved in each transaction.

On September 23, 1981, Webster was tried for the sale of cocaine to Jury on November 5, 1980 on a case stated basis. She was found guilty. Post trial motions were denied, and a sentence of imprisonment was imposed for not less than one nor more than three years.

Appellant contends that the transactional immunity granted by the court in New York is a bar to prosecution

for the possession and sale of cocaine in Pennsylvania. Alternatively, she argues that even if prosecution is not barred by the grant of immunity by the State of New York, the conviction must fall because the Commonwealth failed to meet its burden of proving that it made neither direct nor indirect use of the testimony which she was compelled to give before the Grand Jury in New York.

■■■ Witness immunity is characterized as either transactional immunity or use immunity. Transactional immunity provides a witness full immunity from prosecution for crimes arising from any transaction concerning which the witness was compelled to testify. See: *Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), *reh. denied,* 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972); *United States v. Quatermain,* 613 F.2d 38, 40 (3rd Cir.1980), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2923, 64 L.Ed.2d 812 (1980); *Riccobene Appeal,* 439 Pa. 404, 411–412, 268 A.2d 104, 109 (1970). Use immunity, on the other hand, prohibits the use or derivative use of any testimony compelled over a claim of privilege. See: *Zicarelli v. The New Jersey State Commission of Investigation,* 406 U.S. 472, 475–476, 92 S.Ct. 1670, 1673, 32 L.Ed.2d 234 (1972); *United States v. Quatermain, supra* at 40; *Riccobene Appeal, supra* 439 Pa. at 412, 268 A.2d at 109. Use immunity does not prohibit prosecution for all crimes arising out of the transaction testified to so long as the prosecution's evidence is obtained from a source wholly independent of the compelled testimony.[1] *United States v. Quatermain, supra* at 40; *Riccobene Appeal, supra* 439 Pa. at 412, 268 A.2d at 109.

■■■ Transactional immunity is not required in order to compel testimony over a Fifth Amendment claim of privilege against self-incrimination. "[I]mmunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a

---

1. Pennsylvania courts are empowered by statute to grant only use immunity. See: 42 Pa.C.S. § 5947.

grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader." *Kastigar v. United States, supra* 406 U.S. at 453, 92 S.Ct. 1653, at 1661, 32 L.Ed.2d 212 (1972). See also: *Zicarelli v. The New Jersey State Commission of Investigation, supra* 406 U.S. at 475–476, 92 S.Ct. 1670, at 1673, 32 L.Ed.2d 234 (1972); *United States v. Quatermain, supra* at 40; *Riccobene Appeal, supra* 439 Pa. at 419, 268 A.2d at 109.

■ In *Murphy v. Waterfront Commission of New York Harbor,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); the Supreme Court of the United States held that the Fifth Amendment to the United States Constitution requires a second sovereign to afford a person only use immunity for testimony originally compelled under a grant of transactional immunity by another sovereign. The basis for the recognition of use immunity where another sovereign has compelled testimony by immunizing the witness is the Fifth Amendment privilege against self-incrimination, which is "fully applicable to the States through the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653." *Murphy v. Waterfront Commission, supra* 378 U.S. at 53, 84 S.Ct. 1594, at 1595, 12 L.Ed.2d 678. A grant of use immunity affords protection which is co-extensive with the scope of the Fifth Amendment privilege, and is, therefore, all that is required to protect the privilege. See: *Riccobene Appeal, supra* 439 Pa. at 412, 268 A.2d at 109. Recognition of use immunity by the prosecuting sovereign "leaves the witness and the [prosecuting sovereign] in substantially the same position as if the witness had claimed his privilege in the absence of a [prior] state grant of immunity." *Murphy v. Waterfront Commission, supra* 378 U.S. at 79, 84 S.Ct. 1594, at 1609, 12 L.Ed.2d 678. See also: *Kastigar v. United States, supra* 406 U.S. at 458–459, 92 S.Ct. 1653, at 1663–1664, 32 L.Ed.2d 212; *United States v. DeDiego,* 511 F.2d 818, 822 (D.C.Cir.1975). "A grant of immunity broader than the Fifth Amendment privilege against self-incrimination might [well] infringe upon the right of another sovereignty, whether the Federal Govern-

ment or another State, to enforce its laws." *United States v. DeDiego, supra* at 822.

As noted by the court in *United States v. Meyers*, 339 F.Supp. 1154 (E.D.Pa.1972), "serious considerations of federalism arise when and to the extent that immunity granted a witness by one state impinges upon the independent power of another state to prosecute him.... '[N]o state other than the grantor of immunity has had an opportunity to elect whether it will forego prosecuting the witness as a price worth paying for his testimony. And states may well differ in judgment as to the importance and desirability of prosecuting a particular participant in wrongdoing. Thus, to deprive a state of the right to prosecute a violation of its criminal law on the basis of another state's grant of immunity would be gravely in derogation of its sovereignty and obstructive of its administration of justice.' " *Id.* at 1159 (footnote omitted) quoting *United States ex rel. Catena v. Elias*, 449 F.2d 40 (3rd Cir.1971), *reversed on other grounds*, 406 U.S. 952, 92 S.Ct. 2056, 32 L.Ed.2d 341 (1972).

 Appellant's argument that use immunity fails to afford immunity co-extensive with the protection conferred upon an accused by Article 1, § 9, of the Pennsylvania Constitution is meritless. The privilege against self-incrimination guaranteed by the Pennsylvania Constitution is not broader than the guarantee contained in the Constitution of the United States. Rather, the privileges are identical. See and compare: *Commonwealth v. Sklar*, 497 Pa. 404, 413–414, 441 A.2d 1201, 1206 (1982); *In re Martorano*, 464 Pa. 66, 74–75, 346 A.2d 22, 24 (1975); *In re Falone*, 464 Pa. 42, 47–48, 346 A.2d 9, 11 (1975); *Commonwealth v. McCloskey*, 443 Pa. 117, 147, 277 A.2d 764, 779 (1971), *cert. denied*, 404 U.S. 1000, 92 S.Ct. 563, 30 L.Ed.2d 552 (1971); *Commonwealth v. Kilgallen*, 379 Pa. 315, 324–328, 108 A.2d 780, 784–786 (1954); *Commonwealth v. Field*, 231 Pa.Super. 53, 64 n. 9, 331 A.2d 744, 749 n. 9 (1974). Cf. *State v. Miyasaki*, 62 Haw. 269, 614 P.2d 915 (1980). To protect the guarantee against self-incrimination to a witness who has

been compelled to testify in the courts of a sister state, a grant of use immunity will suffice.

■ Appellant contends that the full faith and credit clause of the United States Constitution requires that Pennsylvania apply transactional immunity. This argument is specious. The order of the New York court did not purport to protect appellant from prosecution in the Commonwealth of Pennsylvania; it granted only immunity from prosecution by New York authorities.

■ Having determined that Pennsylvania was required to grant only use immunity to appellant's testimony before the New York grand jury, we examine appellant's contention that the Commonwealth failed to meet its burden of establishing that it made no use, either direct or derivative, of appellant's compelled testimony in New York.

The Commonwealth was required to establish that its evidence was not tainted in any way as a result of appellant's compelled testimony in New York. "This burden of proof ... is not limited to a negation of taint; rather it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Kastigar v. United States, supra* 406 U.S. at 460, 92 S.Ct. 1653, at 1664, 32 L.Ed.2d 212. See also: *Murphy v. Waterfront Commission, supra* 378 U.S. at 79 n. 18, 84 S.Ct. 1594, at 1609 n. 18, 12 L.Ed.2d 678; *United States v. DeDiego, supra* at 822. It seems clear that the Commonwealth has met its burden in this case.

Appellant was charged in a complaint filed December 22, 1980 with the possession and sale of 6.65 grams of cocaine to Trooper Jury on November 5, 1980. Appellant did not testify before the Steuben County grand jury until March 27, 1981. Appellant's grand jury testimony concerned her purchase of drugs from Robert Bavisotta on November 4, 1980 and November 9, 1980. Although appellant did testify in New York that she had sold the cocaine and marijuana purchased from Bavisotta to others, she did not testify and

was not asked about any transactions or conversations between herself and Trooper Jury.

The charges against appellant in Pennsylvania were initiated and given evidentiary support by Trooper Jury, who made a direct purchase of cocaine from her on November 5, 1980. The evidence to support the charge and prove the sale was not obtained, directly or indirectly, from the immune testimony given by appellant in New York. Rather, the evidence was elicited from Jury, who had direct knowledge of the offense committed. Indeed, although the prosecution had in its possession a copy of the Webster testimony before the Steuben County grand jury, the assistant district attorney who represented the Commonwealth at trial had not previously read it.

We conclude, therefore, that appellant is not entitled to be discharged on the grounds that she was granted immunity in New York. The conviction for making a sale of cocaine in Pennsylvania was based entirely upon evidence derived independently of the testimony given by appellant in New York. The conviction, therefore, was proper.

Appellant also contends that the trial court failed to articulate sufficient reasons for the sentence. We have examined the five pages of reasons given by the sentencing court and find them more than adequate. Because of their length we do not quote them here. Suffice it to say that the court considered appellant's background, her heavy drug involvement, her refusal to participate voluntarily in drug therapy, the nature of the offense, appellant's motive for committing it, and also the fact that she was the mother of two children and had cooperated with law enforcement agencies in the State of New York.

Webster's appeal from the order refusing to dismiss the remaining informations involves two discrete inquiries. The first is whether a separate trial on charges arising from the events of December 21 and 22 will violate Section 110 of the Crimes Code, 18 Pa.C.S. § 110. The other is whether a second trial will violate principles of double jeopardy con-

tained in the Fifth Amendment of the United States Constitution and Article I, Section 10, of the Pennsylvania Constitution.[2]

■ Section 110 of the Crimes Code requires the Commonwealth to consolidate in a single proceeding all known charges based on the same conduct or arising from the same criminal episode unless the court orders separate trials. *Commonwealth v. Hude II,* 500 Pa. 482, 458 A.2d 177 (1983); *Commonwealth v. Beatty,* 500 Pa. 284, 286, 455 A.2d 1194, 1196 (1983); *Commonwealth v. Muffley,* 493 Pa. 32, 425 A.2d 350 (1981); *Commonwealth v. Stewart,* 493 Pa. 24, 28, 425 A.2d 346, 348 (1981); *Commonwealth v. Holmes,* 480 Pa. 536, 540, 391 A.2d 1015, 1017 (1978); *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432 (1973), *vacated,* 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), *on remand, Commonwealth v. Campana,* 455 Pa. 622, 314 A.2d 854 (1974), *cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974); *Commonwealth v. Beckman,* 304 Pa.Super. 239, 244, 450 A.2d 660, 663 (1982); *Commonwealth v. Carelli,* 291 Pa.Super. 502, 505–506, 436 A.2d 228, 230 (1981). Under this section, however, a subsequent prosecution for an offense arising out of the same criminal episode will not be barred if separate trials have been ordered by the court. See: *Commonwealth v. Hude II, supra* 500 Pa. at 493, 458 A.2d at 183; *Commonwealth v. Stewart, supra* 493 Pa. at 30, 425 A.2d at 349; *Commonwealth v. Saunders,* 483 Pa. 29, 34 n. 5, 394 A.2d 522, 525 n. 5 (1978); *Commonwealth v. Holmes, supra* 480 Pa. at 540 n. 3, 391 A.2d at 1017 n. 3; *Commonwealth v. Beckman, supra* 304 Pa.Super. at 246, 450 A.2d at 664. "The compulsory joinder rules set forth in *Campana I and II* and the provisions of section 110 were designed to serve two distinct policy considerations: (1) to protect a person accused

**2.** Denial of a pre-trial application seeking discharge on double jeopardy grounds is considered a "final order" and is immediately appealable. See: *Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977). Accord: *Commonwealth v. Muffley,* 493 Pa. 32, 33 n. 1, 425 A.2d 350, 357 n. 1 (1981); *Commonwealth v. Beckman,* 304 Pa.Super. 239, 241, 450 A.2d 660, 661 (1982).

of crimes from governmental harassment of being forced to undergo successive trials for offenses stemming from the same criminal episode; and (2) as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation." *Commonwealth v. Hude II, supra* 500 Pa. at 489, 458 A.2d at 180. The rule is intended to allow for separate trials whenever the trial court is satisfied that justice so requires. Model Penal Code § 1.08, Comment at p. 39 (Tent.Draft # 5). See also: *Commonwealth v. Tarver*, 467 Pa. 401, 408, 357 A.2d 539, 542–543 (1976); *Commonwealth v. Green*, 232 Pa.Super. 134, 142, 335 A.2d 493, 497 (1975).

■ In the instant case, the defense moved to consolidate the several charges, relying upon Section 110. The Commonwealth requested consolidation of defendants for trial purposes according to alleged offenses; it opposed consolidation of all charges against each defendant, which would have required repeated trials of each alleged incident. The court denied appellant's request that all charges against her be consolidated into one trial. Because of the multiple defendants, who were variously involved in the different events giving rise to the several charges, the trial court ordered separate trials for each incident and joined in a consolidated trial all defendants allegedly involved in each offense. "It is well established that the propriety of consolidating separate indictments for trial is a matter of discretion with the trial judge, and the exercise of this discretion will be reversed only for manifest abuse of discretion or prejudice and clear injustice to the defendant. *Commonwealth v. Moore*, 463 Pa. 317, 320, 344 A.2d 850, 852 (1975); *Commonwealth v. Patrick*, 416 Pa. 437, 445, 206 A.2d 295, 298 (1965); *Commonwealth ex rel. Bolish v. Banmiller*, 396 Pa. 129, 132, 151 A.2d 480, 481 (1959); *Commonwealth ex rel. Spencer v. Ashe*, 364 Pa. 442, 446, 71 A.2d 799, 801, *cert. denied*, 339 U.S. 990, 70 S.Ct. 1015, 94 L.Ed. 1390 (1950)." *Commonwealth v. Morris*, 493 Pa. 164, 171, 425 A.2d 715, 718 (1981). Accord: *Commonwealth v. Hill*, 479 Pa. 346, 350, 388 A.2d 689, 691 (1978). See and compare:

*Commonwealth v. Carroll,* 275 Pa.Super. 241, 418 A.2d 702 (1980). There was no abuse of discretion or clear injustice in the instant case.[3]

The decision of the Supreme Court in *Commonwealth v. Hude II, supra,* does not require a finding that the trial court abused its discretion. In the first place, *Hude II* did not involve a court order directing separate trials and did not purport to limit the exercise of the trial court's discretion in awarding separate trials under Section 110 of the Crimes Code. In fact, the Court in *Hude II* observed that "Section 110(1)(ii) provides that the Commonwealth may request the court to grant separate trials.... [And that such a] procedure will insure that the interests of law enforcement, the judiciary and the accused will be satisfied." *Commonwealth v. Hude II, supra* 500 Pa. at 494, 458 A.2d at 183 (citations omitted). Secondly, the facts in *Hude II* were unique, and the holding thereof must be limited to those facts. There, the defendant had been charged in twenty counts with possession of the same drug and repeated deliveries of that drug to the same person over a two month period. All charges pitted the credibility of the alleged purchaser against that of the accused seller. Therefore, the Court held that the alleged offenses were so similar and so logically interrelated that for practical purposes they involved the same issues of fact and law and were, therefore, a part of the same criminal transaction or episode.[4] An acquittal in a trial on three counts, therefore, barred a second trial on the remaining counts.

In the instant case, the alleged offenses were neither similar nor logically related. They not only involved different people and different transactions, but evidence of appellant's guilt on the two remaining charges will undoubtedly

3. We observe, however, that the reasons for the court's ruling no longer exist and, therefore, do not require that the two remaining charges against Regina Webster be tried separately. All other defendants charged in the same incidents have entered pleas of guilty.

4. Compare: *Commonwealth v. Lee,* 291 Pa.Super. 164, 435 A.2d 620 (1981), where stabbings of two different persons forty minutes apart were held not to be part of the same episode.

be different than that on which the cocaine conviction was based. In contrast to *Hude II*, the different charges filed against appellant in the instant case must depend upon the credibility of different witnesses and different evidence to prove each alleged offense. Thus, *Hude II*, which involved peculiarly unique facts, does not require that we reverse the order refusing to dismiss the remaining charges on grounds that they should have been consolidated with the earlier, separate offense for trial.

██ Similarly, principles of double jeopardy do not bar prosecution for the offenses allegedly committed on December 21 and 22. " 'The double jeopardy clause breaks down into three general rules which preclude a second trial or a second punishment for the same offense: (1) retrial for the same offense after acquittal; (2) retrial for the same offense after conviction; (3) multiple punishment for the same offense at one trial. The judiciary views these rules as expressions of self-evident moral precepts: It is wrong to retry a man for a crime of which he previously has been found innocent, wrong to harass him with vexatious prosecution, and wrong to punish him twice for the same offense.' " *Commonwealth v. Grazier*, 481 Pa. 622, 630–631, 393 A.2d 335, 339 (1978) quoting *Commonwealth v. Mills*, 447 Pa. 163, 169, 286 A.2d 638, 641 (1971) (emphasis omitted). Accord: *Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Commonwealth v. Henderson*, 482 Pa. 359, 368, 393 A.2d 1146, 1151 (1978); *In Interest of R.R.*, 317 Pa.Super. 334, 343–44, 464 A.2d 348, 353 (1983); *Commonwealth v. Maddox*, 307 Pa.Super. 524, 531, 453 A.2d 1010, 1014 (1982).

Appellant does not contend that the offenses charged in the remaining informations are the *same* as the offense for which she has been tried and convicted. Rather, she argues that the double jeopardy clause requires that all offenses arising from a single criminal episode or transaction be prosecuted in a single proceeding. This is the argument espoused by Justice Brennan: "In my view, the Double Jeopardy Clause requires the prosecution, except in most

limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction." *Ashe v. Swenson,* 397 U.S. 436, 453–454, 90 S.Ct. 1189, 1199, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring) (footnote omitted). However, Justice Harlan, concurring in *Ashe v. Swenson,* noted "[i]n [joining the Court's opinion] I wish to make explicit my understanding that the Court's opinion in no way intimates that the Double Jeopardy Clause embraces to any degree the 'same transaction' concept reflected in the concurring opinion of my Brother Brennan." *Id.* at 448, 90 S.Ct. at 1196. The "same transaction" concept was not adopted by a majority of the Court in *Ashe v. Swenson* and has not been adopted by the Supreme Court in later decisions. See: *Robinson v. Neil,* 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973) (Brennan, J., concurring); *Grubb v. Oklahoma,* 409 U.S. 1017, 93 S.Ct. 450, 34 L.Ed.2d 309 (1972) (Brennan, J., dissenting); *Miller v. Oregon,* 405 U.S. 1047, 92 S.Ct. 1321, 31 L.Ed.2d 590 (1972) (Brennan, J., dissenting); *Duncan v. Tennessee,* 405 U.S. 127, 92 S.Ct. 785, 31 L.Ed.2d 86 (1972) (Brennan, J., dissenting). See also: *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432 (1973), *vacated,* 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), *on remand, Commonwealth v. Campana,* 455 Pa. 622, 314 A.2d 854 (1974), *cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974); *State v. Gosselin,* 117 N.H. 115, 370 A.2d 264 (1977).

It seems clear, therefore, that appellant's conviction for selling cocaine on November 5 is not a bar to a separate prosecution for the marijuana offenses committed on December 21 and 22. Appellant's conduct on November 5, December 21 and December 22 gave rise to separate and distinct offenses which require the presentation of different evidence in order to obtain convictions. Appellant was convicted of selling cocaine directly to Trooper Jury on November 5. This offense was complete on that date. The charges of conspiracy and attempt to deliver 600 pounds of marijuana occurred on another occasion, at a different place

and involved an alleged conspiracy with and assistance from additional persons. Finally, the charge pertaining to the twenty-four pounds of marijuana resulted from the execution of a search warrant for appellant's home on December 22. The mere fact that Trooper Jury's undercover work was instrumental in allowing the Commonwealth to discover and prove several drug violations did not render the separate violations a part of the same offense for double jeopardy purposes.

The judgment of sentence for selling cocaine is affirmed. The order refusing to dismiss informations containing separate marijuana charges is also affirmed.

McEWEN, J., filed a concurring opinion.

McEWEN, Judge, concurring:

While the majority opinion is a fine and careful expression of view, I do not agree with the interpretation of the majority that the decision of our Supreme Court in *Commonwealth v. Hude II*, 500 Pa. 482, 458 A.2d 177 (1983) must be narrowly construed. I perceive *Hude II* not as a mere dalliance with a proposition but as a declaration of commitment to the principle that our courts must guard against prosecutorial harassment—whether effected by oversight or by design. The legislature certainly so pronounced when it enacted sections 109 through 112 of the Crimes Code, 18 Pa.C.S.A. §§ 109–112, and this court has itself assumed such a duty. *See Commonwealth v. Abbott*, 319 Pa.Super. 479, 466 A.2d 644 (1983); *Commonwealth v. Mascaro*, 260 Pa.Super. 420, 394 A.2d 998 (1978). Nor does this stance of broad interpretation either offend principles of fairness or ignore demands of the pragmatic, since, under section 110, the prosecution need only make application to the court for permission to conduct successive prosecutions. In any event, subject solely to this exception, I join in the opinion of the majority and affirm the judgment of sentence as well as the order refusing the dismissal of certain informations.