Opinion by
 

 Cunningham, J.,
 

 As one of the results of a mass trial upon twenty-one district attorney indictments against four defendants, consolidated for trial in the court below without objection, John S. Mecleary, a Justice of the Peace for Upper Darby Township, Delaware County, and appellant herein, against whom six indictments were réturned, was found guilty by the jury solely upon the fifth count of each of two indictments — Nos. 624 and 634 September Sessions, 1940.
 

 A sentence of a fine of f500 costs, and imprisonment in the county jail for not less than one nor more than two years was pronounced against him at No. 634, and a like sentence imposed at No. 624 to run concurrently with the sentence at No. 634. A decree was also entered declaring the office vacant.
 

 The present appeals were taken by Mecleary from the above sentences — No. 108 from the judgment at No. 624, and No. 109 from that at No. 634; an order of supersedeas was granted in each appeal by the court below. Both appeals will be disposed of in this opinion.
 

 
 *12
 
 We hare examined all the evidence, contained on more than six hundred printed pages of the record, much of which is, of course, irrelevant to the charges against appellant, for the purpose of ascertaining whether there is any competent evidence supporting the verdicts against him. In the fifth count in each indictment appellant is charged with altering public records and malfeasance in office. The material facts upon which they were based are practically uncontroverted in the testimony. The issue between the Commonwealth and appellant relates to the inferences properly deducible from those facts.
 

 The origin of these prosecutions seems to have been a suspicion by the district attorney’s office that through a corrupt combination of politicians, employees of the bureau of police of Upper Darby Township, and the committing magistrates for that department, certain cases, in which the persons arrested were charged 'with driving automobiles while under the influence of intoxicating liquor, had been “fixed” and prevented from reaching the quarter sessions by political influence and the payment of bribes. Specifically, the presentation of the twenty-one district attorney bills, to which we have referred, was predicated upon the manner in which the charges of drunken driving against two individuals, Casper Maslo, Jr., and George D. Shaw, were disposed of by the police department and the appellant, who, in addition to performing his official duties at his own office, was, during 1938 and 1939, by appointment of the township commissioners, serving each morning as the committing magistrate at the bureau of police in the municipal building.
 

 The cases were divided into two general classes: One arising out of the arrest of Maslo; the other out of the an*est of Shaw, both of whom were indicted for the misdemeanor of “operating a motor vehicle while under the influence of intoxicating liquor” in violation of the
 
 *13
 
 amendatory Act of June 29, 1937, P. L. 2329, 2360, to the Vehicle Code, 75 PS §231, and for corrupt solicitation, bribery, etc. ¡Shaw was acquitted upon all the charges against him and Maslo entered a plea of guilty to operating a motor vehicle while intoxicated. The fourth defendant, William Gawkowski, was indicted for soliciting bribes, etc., and was convicted upon certain counts in the indictment against him. Neither Maslo nor Gawkowski has appealed. It may be stated at this point that there is not a particle of testimony in the record that appellant ever received or solicited any money, or anything of value, directly or indirectly in connection with the performance of his official duties in either case, or that he was approached or influenced by any person in their performance.
 

 The first, second, third and fourth counts in the indictment at No. 634 charged appellant with bribery and extortion in the Maslo case, and the same counts in No. 624 with the same offenses in the Shaw case. These counts were withdrawn during the trial and verdicts of acquittal were directed in two indictments at other numbers charging bribery. On various indictments charging conspiracy to obstruct justice, in which appellant was named, verdicts of not guilty were rendered.
 

 The fifth count in the indictment at No. 634 reads:
 
 [1]
 
 
 *14
 
 The fifth count in the indictment at No. 624 is in the language of note (1) with the exception that the date there laid is September 30, 1939, and the name of the person arrested, George D. Shaw. It is conceded by the Commonwealth that there was no alteration of any record, public or otherwise, in the Shaw case; and as he was acquitted of driving while intoxicated, we may confine our attention to the Maslo case.
 

 For all practical purposes, the first question involved is whether there is any evidence upon the record from which a jury could reasonably be permitted to find that appellant violated the fifteenth section of the Penal Code of March 31, 1860, P. L. 382, 18 PS §362, by fraudulently altering a public record of any public office of this Commonwealth.
 

 That section reads: “If any prothonotary, clerk, register, public officer or other person shall fraudulently make a false entry in, or erase, alter, secrete, carry away or destroy any public record, or any part thereof, of any court or public office of this commonwealth, such person shall be guilty of a misdemeanor, and on conviction shall be sentenced to pay a fine not exceeding one thousand dollars, and to undergo an imprisonment, by separate or solitary confinement at labor, not exceeding two years.”
 

 These facts are disclosed by the evidence: About 4:35
 
 *15
 
 p.m. on October 24, 1938, Maslo, while driving an automobile in Drexel Hill, collided with an automobile standing along the highway and occupied by William E. Yurasko. The automobile of the latter was damaged to the extent of several hundred dollars and Maslo suffered an injury to his head. Police officers 'Chambers, Hoban, and Lyster, arrested both Yurasko and Maslo; the latter was taken to the Delaware County Hospital where he was treated for a “contusion of left side of scalp.” Both drivers were then taken to the bureau of police of the township where an arrest report, Corn’s. Exs. 1 and 2, was made out for each prisoner and they were “slated” in a book, kept for that purpose and hereinafter described in detail. As the report relative to Yurasko stated he was sober, he was released upon his promise to appear at the police station at 8:30 A.M. on the following morning for a hearing before appellant, sitting as a committing magistrate. The arresting, officers thought Maslo was intoxicated.
 

 Referring to his arrest report, J. J. Casassa, on duty as house sergeant, testified Maslo was slated between five and six o’clock in the evening of October 24th; that the charge originally entered against him on the report was “operating an automobile while under the influence of liquor and assault by automobile.” The further testimony of the sergeant was that the officers wanted Maslo examined by the district police surgeon. The doctor was promptly summoned, examined Maslo, made out written reports of the result of his examination, and left them with the captain. These reports are in evidence as Corn’s. Exs. 10 and 12 and will be detailed later. This witness also testified that the charge in the arrest report was altered at some subsequent time in the handwriting of Sergeant L. F. Neagle, appellant’s elerk, to read “assault by automobile.” Later in the evening Maslo was discharged from custody “upon a copy of the charge” by reason of the assurance of Clark Wood
 
 *16
 
 ing, one of the commissioners of the township, that he would appear for a hearing at 8:30 the following morning. This practice of discharging prisoners “upon a copy of the charges” seems to be prevalent in Philadelphia and vicinity. Its propriety is not here involved and we express no opinion upon it. Appellant was not present and had nothing to do with Maslo’s release.
 

 The chief exhibit upon which the alteration, referred to in the fifth count of the indictment at No. 634, was made is a page of the “slating docket” of the bureau of police — a photostatic copy of the page in question was introduced as Corn’s. Ex. 5. This is the only exhibit in the case which could be considered as even faintly approaching a “public record.” The entries upon the exhibit were made by Sergeant Louis P. Neagle, above mentioned, who acted as appellant’s clerk at the police station. The page contains the names, etc., of sixteen persons arrested and “slated” between October 23d and 29th, 1938, together with a record of the disposition of the charges against each. The pages of the docket are ruled in columns with appropriate headings. Those with which we are concerned were headed: “Number — ■ Date— Name of Person Arrested— Address— Charge— Disposition— Magistrate — Remarks.” About halfway down the page the original slating of Maslo thus appeared thereon: “Number —1308; Date — 10/24/38; Name of Person Arrested — Casper Maslo, Jr.; Address — 170 Blanchard St.; Charge — Drunken driving; Disposition — Discharged; Magistrate — Mecleary; Remarks — 11/18—12/2.”
 

 The above mentioned physical examination of Maslo was made by D. Sharpless, M. D., the district police surgeon, at 5:15 p.m., and his report was filed with the captain of police at 5:30. Two copies of the report were filled out — one, intended for the bureau of police, and the other for the use of the district attorney’s office, in the event that a prosecution resulted and the defendant
 
 *17
 
 was held for trial in the quarter sessions. These copies are in evidence as Coin’s. Exs. 10 and 12. In substance, the doctor reported that Maslo had an “odor of alcoholic liquor on his breath” and admitted having had “two beers and one whiskey”; that he was “dazed”; and that his “coordination and sense of ideation were fair and gait slightly staggering.” The ninth question upon the printed form, for the police bureau reads:
 

 “9. Do you consider operator capable or fit to operate vehicle?” To this inquiry the doctor wrote the answer, “No.” Under the heading “Note” the doctor wrote on Exhibit 10, “Complaining of pain in head — my opinion not intoxicated but dazed due to injury (contusion left temple).”
 

 Upon the form prepared for use by the district attorney’s office, the doctor, in reply to the ninth question above quoted, wrote, “Not due to intoxication” and added a note reading, “Complaining of pain in head— (my opinion dazed by injury but not intoxicated).”
 

 When appellant arrived at the police station at 8:30 on the morning of October 25th to dispose of the cases of prisoners arrested during the preceding day, there were but two entries of arrest on October 24th — those of Maslo and Yurasko, both of whom were present. In accordance with the usual practice, appellant was handed the arrest reports of each of them, the surgeon’s report of his examination of Maslo, and the slating docket was placed before him. He testified that he had no information about Maslo other than the statements upon these reports; that neither of the arresting officers appeared; and that no officer in the hearing room, or privately, gave him any information about Maslo. As above stated, Yurasko was discharged. Referring to the charge against Maslo, appellant testified: “To the best of my recollection when the case was called up I examined the papers. While I was examining them some person — I don’t know who now — asked for a further
 
 *18
 
 hearing to be had, that the case be postponed....... I finished examining them (the papers) and I found that the man had passed the examination by the doctor, so I took for granted the police were satisfied with the examination. I set a further hearing on it, to see whether there would be any A. & B. by auto prosecution on it.”
 

 Appellant then fixed November 18th as the date of the further hearing, as indicated by the entry “11-18” under the heading “Remarks.” He then required Maslo to enter into a recognizance in the sum of $500 conditioned for his appearance at the hearing. William Gawkowski became Maslo’s surety on this bond
 
 [1]
 
 and Maslo was released from custody. Upon his release he was interviewed by a representative of the insurance carrier for Yurasko and a statement was obtained from him to the effect that the accident was his fault; that he was intoxicated ; and that he would pay for the damages done to Yurasko’s car. It was not shown that appellant ever had any knowledge of the interview or of the statement signed by Maslo. A receipt, Corn’s. Ex. 17, was admitted in evidence reciting that under date of November 4, 1938, Yurasko received from Gawkowski for Maslo the sum of $50 covering “Maslo’s share of damages” to Yurasko’s car. It also appeared in the evidence that this $50 was the amount of deductible collision insurance for which Yurasko’s carrier was not liable and that the balance of the damages to his car was paid by his carrier.
 

 Sergeant Neagle testified (92a) that at the postponed hearing on November 18th at the police station appellant directed him to change the charge on the slating docket from “operating an automobile while intoxicated” to read, “assault by auto” and that, pursuant to these instructions, he erased the original charge and entered in lieu thereof “Assault by auto — Note—struck on head — dazed.” It was Neagle’s recollection that
 
 *19
 
 Yurasko, as well as Maslo, was at the postponed hearing of November 18th but that no witnesses were heard. The hearing was further continued to November 25th and then to December 2d, as indicated by the figures “12-2” under the heading of “Remarks” upon the slating docket. Upon the last named date Maslo appeared and was discharged. Yurasko, although notified of the continuance to November 25th, did not appear probably because he had been paid for the damages to his car. It was.also shown that the “further hearing report” of the bureau of police, Corn’s. Ex. 3, contained a record of the preliminary hearing on October 25th and the final hearing December 2d, with a notation reading, “Changed chg — November 18 ’38 to asst, by auto, owing to dazed condition of C. Maslo, Jr., due. to accident, Cont. of scalp.”
 

 The only other docket in evidence was appellant’s docket kept at his own office and into which he transferred cases from the slating docket of the bureau of police. Appellant’s docket, Corn’s. Ex. 15, shows the entry thereon of the Maslo case, a recital that he had been .arrested on view by officers Hoban and Lyster on October 24, 1938; that a hearing was held on October 25th; that he had been placed under bail for further hearings on November 25th and December 2d, upon the charge of “A. & B. by auto.” The case ends with the following record: “Dec. 2-38 discharged.. Had been examined previously by doctor and pronounced sober.”
 

 Appellant testified (607a) he did not specifically dictate the change in the charge upon the slating docket and the arrest report, but stated that after examining the surgeon’s reports he had a discussion with Neagle about the charges against Maslo and told him that “where a man was slated for driving while under the influence of intoxicating liquor, in a collision, and he had an examination and the man passes, that he should not be slated for driving while under the influence of
 
 *20
 
 intoxicating liquor; it should be an A. and B. by auto.”
 

 In answer to a question by the trial judge, MacDade, J., as to why hef postponed the hearing until November 18th, appellant replied: “A. Well, my policy has always been on an A. & B. by auto — the orders of the court and the district attorney’s office was to keep them away from here, and if possible get them straightened out.”
 

 It is clear beyond any controversy that although ample opportunity was afforded Yurasko and the officers who arrested Maslo to make an information against him before appellant no information was ever made, nor was any attempt made by appellant to collect any costs from the county, or any person. An excerpt from appellant’s testimony (588a) reads: “Q. Did you rely on that doctor’s report? A. Yes, sir. Q. Was any information given you iby any of the police at any time which would lead you to believe that the doctor’s report was incorrect? A. Nothing to the contrary was ever given to me.” Appellant’s defense was summed up by him in the statement (595a), “All I did was to do what I thought was right; that is, all.”
 

 In this connection it should be noted that appellant’s guilt or innocence of the charge of fraudulently making the alterations shown by the evidence does not depend upon an answer to the question whether Maslo was, in fact, intoxicated when arrested and slated. The arresting officers thought, from their laymen’s point of view, that 'he was, but the expert medical examiner certified he was not intoxicated. Nor is the fact that Maslo entered a plea of guilty to driving while intoxicated conclusive in any way of the fundamental issue between the Commonwealth and appellant. The test is whether appellant honestly believed, from all the information in his possession, that the only offense upon which Maslo should be slated was assault and battery by automobile.
 

 We are unable to find upon this record any testimony from which a ljury could reasonably be permitted to
 
 *21
 
 find that appellant
 
 fraudulently
 
 caused the alterations to be made. In view of this conclusion, it is unnecessary for us to consider whether any of the doekets or papers admitted in evidence in this case was a “public record” of any “public office of this Commonwealth,” within the meaning of the above quoted 15th section of the Penal Code of 1860, and we express no opinion thereon.
 

 The jury received little, if any, help from the charge of the trial judge upon the primary issue here involved —the good faith of appellant in treating the charge against Maslo as one of assault and battery by automobile and permitting the parties to settle it as any ordinary case of assault and battery could lawfully be settled.
 

 Although the charge covers sixty-five pages in the printed record and contains several lengthy disquisitions upon irrelevant matters, no mention whatever was made therein of the above quoted section of the Penal Code making the fraudulent altering of public records a misdemeanor — the section under which the fifth count in each indictment was drawn. It is difficult to ascertain just what legal position the trial judge took with reference to the reports of the examining surgeon.
 

 At one place (689a) he said they were “rather extensive” and added, “I don’t know what they contain but it is not the ordinary method of making out reports— it is left open — something might be added to the report, too.” The reports were not extensive; they were complete and definite, constituted a vital part of appellant’s defense, and should not have been thus arbitrarily brushed aside in the trial judge’s review of the evidence; it was his duty to know what they contained.
 

 In the second place, the Commonwealth contends, and the trial judge charged, that under the evidence appellant could be convicted of the
 
 common law offenses
 
 of malfeasance, misfeasance, nonfeasance, and misde
 
 *22
 
 meanor in office. As all the counts in the indictment at No. 624, except the fifth, were withdrawn, and as there was no evidence of the alteration of any records in the Shaw case, the concurrent sentence at that number seems to have been based entirely upon a finding by the jury that appellant had committed the above mentioned common law offenses.
 

 As we understand the Commonwealth’s contention, it is that the failure of appellant to have a formal complaint made before him by Yurasko or one of the arresting officers, the granting of further hearings to afford the parties an opportunity to arrive at a settlement, and the final discharge of Maslo, amounted to nonfeasance and malfeasance in office. There are a number of reasons why a conviction of appellant upon these charges should not be sustained. He was not indicted for any common law offenses; each count in the indictments was based upon a statutory offense and so charged. It is argued, however, that the concluding paragraph of the fifth count in each indictment (Note 1) should be construed as charging the common law offenses now under consideration. The language of the paragraph — “Wherefore and by reason of the matters set forth above and various other matters the said John S. Mecleary, in his office as Justice of the Peace as aforesaid, and so acting, on the day and year aforesaid and at various other times......unlawfully, wilfully and maliciously and corruptly did commit malfeasance, misfeasance, nonfeasance, and misdemeanor in office, contrary to the form of the Act of the General Assembly in such case made and provided and against the peace and dignity of the Commonwealth of Pennsylvania”— does not warrant the Commonwealth’s contention. It expressly refers to the “matters set forth above” in the indictment, namely, the soliciting and accepting of bribes, extortion, collecting illegal fees, and the accepting of money for failing to proceed against Maslo upon
 
 *23
 
 the charge oí operating a motor vehicle while under the influence oi intoxicating liquor, all of which charges were withdrawn by the Commonwealth. Manifestly, the phrase “various other matters” is too indefinite to give appellant any notice that he would be called upon to meet the accusations made at the trial as constituting malfeasance in office. Aside from these somewhat technical considerations, there is ño evidence upon the record which would sustain a conviction even if the charges now under consideration had been properly pleaded.
 

 The Commonwealth and the trial judge, throughout the case, emphasized the conceded fact that appellant did not request or urge any person to make a formal information before him, accusing Maslo of driving while intoxicated. In instructing the jury the trial judge devoted several pages to a citation and discussion of Section 1203 of the Vehicle Code, as amended June 22, 1931, P. L. 751, 75 PS §733, providing for the arrest by police officers, upon view, of any person committing certain violations of the code and directing that “such peace officers shall forthwith make and file with the magistrate, before whom the arrested person is taken, án information setting forth in detail the offense, and at once furnish a copy thereof to the person arrested.” The jury was instructed to apply the provisions of this section “to the testimony in this case as to just what transpired at the time of the arrest of these defendants” —Shaw and Maslo. Obviously, the section has no application to any of the issues arising under the indictment against appellant. The arresting officers were not on trial. It seems to have been the position of the trial judge that these officers were inore competent to decide whether Maslo was in fact intoxicated than was the examining surgeon, and that appellant in some way or other was responsible for what the trial judge considered was a dereliction upon their part. There is not a particle of evidence that appellant in any way discour
 
 *24
 
 aged or prevented the officers, Yurasko, or any other person, from making an information. Throughout the entire proceedings appellant was acting in a judicial capacity and not as a prosecutor.
 

 “Others may differ from [such an officer’s] judgment, but in its exercise he is not subject to criminal liability
 
 unless bad faith or Corruption be shown.
 
 Malfeasance in office cannot be charged except for breach of a positive statutory duty or for the performance of a discretionary act with
 
 an improper or corrupt motive”
 
 (Italics ours):
 
 McNair’s
 
 Petition, 324 Pa. 48, 55,187 A. 498.
 

 All through the general charge it was the position of the trial judge that the duty of requiring an information to be made rested upon appellant, but when this issue was squarely raised by the points for charge submitted by counsel for appellant, his answers were so conflicting that it is impossible to ascertain just what his position really was.
 

 The fifteenth point and the reply of the trial judge thereto (699a) read: “15. I charge you that it was not the duty of John S. Mecleary sitting as a Justice of the Peace to see to it that the police brought criminal charges against Casper Maslo, Jr. by written or sworn information when the police failed to do so. [Ans.] Denied.”
 

 The seventeenth point and the answer thereto (699a) read: “17. I charge you that under the constitution of Pennsylvania John S. Mecleary while acting as a Justice of the Peace was a judicial officer and as such it was not his duty to urge anyone to file an information before him preferring charges against Casper Maslo, Jr. [Ans.] It was not his duty to encourage anyone to file an information — we affirm that.”
 

 For a jury to be told in one breath that it was the duty of appellant to see to it that the police brought formal criminal charges against Maslo and in the next that it was not his duty to encourage anyone to file
 
 *25
 
 such, an information must have left their minds in a state of confusion as to the duties and responsibilities of appellant.
 

 As in the matter of the statutory charge of fraudulently altering a public record, our examination of the evidence has . not disclosed any circumstances from which a jury could draw a reasonable inference that any act, or omission, upon the part of appellant in disposing of the charges against Shaw or Maslo was wilfully corrupt and constituted a breach of any duty imposed upon him by his acceptance of his public office. In our opinion, his motion for a directed verdict in his favor upon each indictment should have been granted. It may have been entirely proper for the district attorney’s office to institute these prosecutions but we think it failed to show any fraudulent altering of any paper or docket by appellant, or any malfeasance or nonfeasance of any kind in his handling of either case.
 

 Appellant’s counsel justly complain that the trial judge, throughout the trial, “repeatedly disparaged, discredited and ridiculed the defendant, his attorney, and even the Commonwealth’s witnesses wherever their testimony favored the defendant.” As the sustaining of some, or all, of the assignments of error based upon the manner in which the trial judge conducted the trial would result in nothing more than the granting of a new trial and as we have concluded the appellant is entitled to be discharged, it is not necessary to discuss these assignments in detail. We deem it propel” to say, however, that many of them are well grounded. The record is replete with instances in which the trial judge departed from the clear line of judicial duty by taking witnesses and parties out of the hands of counsel and cross-examining them in a tone and manner deprecatory to them and prejudicial to appellant’s rights. Unwarranted criticisms, innuendoes, and ridicule were frequently indulged in at the expense of counsel and wit
 
 *26
 
 nesses. In short, the principles laid down in
 
 Shappel et al. v. Philadelphia,
 
 115 Pa. Superior Ct. 529, 176 A. 69, and the cases there cited were flagrantly violated. It is due the trial judge to say that he attempted to cure yrhat must have realized had been questionable conduct upon his part by saying in his charge: “If anything has been said or done which would indicate how the trial judge feels in this matter, you will ignore the same entirely because we are leaving the entire matter to your good judgment. The matter is entirely with you: it is your opinion which will prevail and not ours. And if we expressed an opinion it is subordinated to yours.” The trouble with this admonition is that the damage had been done and it would be humanly impossible for the jurors to disregard what they had seen and heard all through the trial.
 

 The judgments are severally reversed; the decree removing appellant from his office of Justice of the Peace is vacated and he is discharged.
 

 Baldrige and Rhodes, JJ., would grant a new trial.
 

 [1]
 

 “5. And the said John S. Mecleary, in his official capacity as [Justice of the Peace] and so acting on the [25th day of October, 1938] and within the jurisdiction of this court, with force and arms, etc., contriving and intending the duties of his said office as Justice of the Peace and the trust and confidence thereby reposed in him to prostitute and betray, did then and there unlawfully, wilfully and maliciously alter and cause to be altered the public records concerning the arrest of one Casper Maslo, Jr., on a criminal charge, that of .operating a motor vehicle while under the influence of intoxicating liquor, which case and charge was then and there duly pending before him, the said John S. Mecleary, .as Justice of the Peace, whereby the said John S. Mecleary, Justice of the Peace, the duties of his said office and the trust end confidence in him thereby reposed, did prostitute and betray
 
 *14
 
 to the great scandal ,and dishonor of the public justice of the said Commonwealth, and contrary to the form of the Act of the General Assembly in such case made and provided and against the peace ,and dignity of the Commonwealth of Pennsylvania.
 

 “Wherefore and by reason of the matters set forth above and various other matters the said John S. Mecleary in his office as Justice of the Peace .as aforesaid, and so acting, on the day and year aforesaid and at various other times......unlawfully, wilfully and maliciously and corruptly did commit malfeasance, misfeasance, nonfeasance and misdemeanor in office, contrary to the' form of the Act of the General Assembly in such case made and provided and against the peace and dignity of the Commonwealth of Pennsylvania.”