375 A.2d 756

**COMMONWEALTH of Pennsylvania**

v.

**James D. BARGER, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Roy O. WELLENDORF, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Charles J. BUCHINSKY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1976.

Decided June 29, 1977.

60

62

John Rogers Carroll, Philadelphia, for appellant at No. 171.

Smith Barton Gephart, Harrisburg, for appellant at No. 169.

Arthur L. Goldberg, Harrisburg, for appellant at No. 167.

Edwin W. Frese, Jr., Chief Deputy District Attorney, Harrisburg, with him LeRoy S. Zimmerman, District Attorney, Harrisburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

The precise issue before us on this interlocutory appeal is whether an allegation that officials of the Pennsylvania State Police agreed to omit information as to the drinking of state troopers from the narrative section of the Pennsylvania State Police accident reports charges a crime sufficient for the convening of an investigating grand jury, a presentment charging such officials with conspiracy and solicitation to tamper with public records, and informations charging the same offenses. For the reasons hereinafter set forth, we affirm the orders of the lower court and remand for further proceedings.

For the purpose of this appeal, the history of this case is essentially undisputed. On March 28, 1974, appellant Charles J. Buchinsky, then the Director of the Bureau of Patrol of the Pennsylvania State Police, issued an oral directive that thereafter it was to be the policy of the Pennsylvania State Police to omit from Paragraph 68 of their accident reports any reference to the consumption of alcoholic beverages on the part of state troopers on duty who were involved in motor vehicle accidents.[1] This directive was issued at a Troop Commander's meeting held at the Pennsylvania State Police Academy in Hershey, Pennsylvania, and in the presence of appellant James D. Barger, then the Commissioner of the Pennsylvania State Police. On September 5, 1975, the District Attorney of Dauphin County petitioned the lower court to convene a special investigating grand jury. The lower court granted the petition on September 10, 1975, and the investigating grand jury was convened pursuant to that order on November 6, 1975. On January 13, 1976, the special investigating grand jury filed its first and final presentment which recom-

1. The prior policy of the Pennsylvania State Police was contained in Operations Manual 7–2 and Special Order 73–193. Pursuant to these written regulations the drinking information was to be included in Block No. 68 of the accident report. This policy became effective on November 5, 1973, the date of Special Order 73–193, and continued in effect until March 28, 1974, the date the oral directive was issued at Hershey.

mended, among other things, that appellant Buchinsky be prosecuted for committing the crimes of criminal conspiracy [2] and criminal solicitation [3] to tamper with public records or information; [4] that appellant Barger be prosecuted for committing the crimes of criminal conspiracy to tamper with public records or information and perjury; [5] and that appellant Wellendorf be prosecuted for committing the crime of perjury. By per curiam order dated January 15, 1976, the Dauphin County Court of Common Pleas directed the District Attorney to prepare and file informations consistent with the recommendations of the presentment of the special investigating grand jury. The appropriate informations were filed on February 10, 1976. Numerous motions and applications for pre-trial relief were thereafter filed by each of the appellants. By order dated May 6, 1976, the lower court issued orders covering each of the appellants' pre-trial motions and applications. The lower court specifically denied each appellant's application in the nature of a motion to dismiss the information and abandon prosecution. On May 12, 1976, all three appellants filed motions for pre-trial certification of a controlling question of law. The lower court certified the above issue on May 21, 1976. We allowed this interlocutory appeal by order dated June 30, 1976, pursuant to § 501(b) of the Appellate Jurisdiction Act. [6]

## I

Limiting our analysis, as we must, to the precise issues presented by the question certified to our court, we must first determine whether the convening of the special

2. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 903 (1973).

3. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 902 (1973).

4. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 4911 (1973).

5. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 4902 (1973).

6. Act of July 31, 1970, P.L. 673, No. 223, art. V, § 501, 17 P.S. § 211.501 (Supp.1977–78).

investigating grand jury was a proper procedure in which to commence the criminal prosecutions in this case. At the outset it is important to note that a special investigating grand jury serves as alternative for the normal methods of commencing criminal prosecutions in our Commonwealth.[7] Through its use the attendant procedural protections of a preliminary arraignment and preliminary hearing are not available to an accused. *Commonwealth v. Field,* 231 Pa.Super. 53, 331 A.2d 744 (1974). Thus, the rule has evolved in Pennsylvania that the power to convene an investigating grand jury "is a most delicate one, [which] is never exercised unless urgent necessity or . . . [where] the public interest would suffer from delays incident to ordinary forms of law." *McNair's Petition,* 324 Pa. 48, 60, 187 A. 498, 504 (1936).

Our Supreme Court in *McNair's Petition,* supra, first set forth the requirements that must be met to justify the convening of a special investigating grand jury. Citing Judge King in *Lloyd & Carpenter's Case,* 5 Pa.L.J. 55, 58, 3 Clark 188, 192 (Ct. of Qtr. Sess. of Phila. 1845), the *McNair* Court established the following seven criteria:

"(1) such an investigation must have a definite purpose to uncover criminal acts which seriously affect or injure the public generally; (2) the investigation may not be aimed at individuals nor at the commission of ordinary crimes, but should be matters of a criminal nature wherein public officers or the interests of the general public are involved; (3) the ordinary processes of the law must be inadequate to cope with or discover such offenses; (4) the acts just be part of a criminal conspiracy systematic, or of a widespread nature; (5) at least one or more cognate offenses must exist upon which to base the general investigation; (6) the criminal acts being investigated must require immediate attention; and (7) the court must have reasonable cause from direct knowledge or knowledge gained

7. *See Commonwealth v. McCloskey,* 443 Pa. 117, 130–31, 277 A.2d 764, 771, *cert. denied,* 404 U.S. 1000, 92 S.Ct. 559, 30 L.Ed.2d 552 (1971) for a listing of the other exceptional methods by which criminal prosecutions can be commenced in Pennsylvania.

from trustworthy information to believe that an investigation will disclose some criminal conduct which is within the competence of the grand jury to investigate and within the jurisdiction of the court to punish. 324 Pa. at 61–62, 187 A. at 504–05."

See In re Investigation of January 1974 Philadelphia County Grand Jury, 458 Pa. 586, 600, 328 A.2d 485, 491 (1974). Thus the rule evolved in Pennsylvania[8] that only when the McNair standards were met could a special investigating grand jury be properly convened. Unlike investigating grand juries in some states, the freedom of the grand jury to investigate in our state was, and remains, severely restricted. Commonwealth v. McCloskey, supra, 443 Pa. at 132–33, 277 A.2d at 772.

More recently, our Supreme Court in Commonwealth ex rel. Camelot Detective Agency, Inc. v. Specter, 451 Pa. 370, 303 A.2d 203 (1973), after reviewing McNair, supra, redefined the minimum requisites that must be met for the calling of a grand jury investigation. The Camelot court reiterated the essential elements enumerated in McNair and Commonwealth v. McCloskey, supra, but in a more simplified and refined manner. Consequently, the Court held that the following five criteria must now be met before an investigating grand jury can properly be convened in our Commonwealth: (1) the subject matter of the investigation must affect the members of the community as a whole, rather than as individuals; (2) the investigation must be aimed at conditions and not primarily at individuals; (3) the ordinary processes of the law must be inadequate to cope with the problems; (4) the investigation must have a

8. See Commonwealth v. McCloskey, 443 Pa. 117, 277 A.2d 764, cert. denied, 404 U.S. 1000, 92 S.Ct. 559, 30 L.Ed.2d 552 (1972); Smith v. Gallagher, 408 Pa. 551, 185 A.2d 135 (1962); Hamilton Appeal, 407 Pa. 366, 180 A.2d 782 (1962); In re Petition of Grace, 397 Pa. 254, 154 A.2d 592 (1959); Philadelphia Grand Jury Investigation Case, 347 Pa. 316, 32 A.2d 199 (1943); In re Dauphin County Grand Jury Investigation (No. 1), 332 Pa. 289, 2 A.2d 783 (1938); Shenkhar v. Harr, 332 Pa. 382, 2 A.2d 298 (1938); Commonwealth v. Soloff, 175 Pa.Super. 423, 107 A.2d 179 (1954); In re Investigation of Conditions, 173 Pa.Super. 197, 96 A.2d 189 (1953); Commonwealth v. Haines, 171 Pa.Super. 362, 90 A.2d 842 (1952).

defined scope, be aimed at crimes, and supported by information indicating the existence of a system of related crimes or a widespread conspiracy; and (5) information as to the crimes must come from direct knowledge or a trustworthy source. *Commonwealth ex rel. Camelot Detective Agency, Inc. v. Specter*, supra, 451 Pa. at 374, 303 A.2d at 205; *see* Segal, Spivack and Costillo *Obtaining a Grand Jury Investigation in Pennsylvania*, 35 Temple L.Q. 73, 75 (1961). *Camelot* sets forth the narrow set of standards by which the propriety of convening the special investigating grand jury in this case must be judged. *In re Investigation of January 1974 Philadelphia County Grand Jury*, supra, 458 Pa. at 599–600, 328 A.2d at 491.

■ We believe that the convening of the special investigating grand jury was proper under the circumstances presented in this case. The appellants do not contend that the scope of the grand jury's investigation was impermissibly broad, nor do they argue that the investigation was aimed primarily at individuals. They do not attack as untrustworthy the prosecutorial authorities' source of information, nor do they contend that the subject matter of the investigation only affected individuals as opposed to members of the community as a whole. Instead, appellants contend that (1) the special investigating grand jury was not convened to investigate criminal activity and (2) the ordinary processes of law were adequate to cope with the problem. We shall discuss these arguments in reverse order.

It is well-settled that a grand jury investigation is not needed to investigate ordinary crimes since the ordinary legal procedures are more than adequate avenues on which to proceed. *McNair's Petition*, supra, 324 Pa. at 61, 187 A. at 504. However, the difficulty in differentiating the ordinary from the extraordinary crime has been recognized:

"Certainly it is not the bare elements of the crime itself. The criteria is rather the *impact* that the particular acts have upon the public. This in turn may sometimes be affected by the position of public trust held by the participants. For example, the commission of burglaries, unac-

companied by any special circumstances will not ordinarily justify a grand jury investigation. But, if the burglar is a police officer, and other police officers are participating in a burglary conspiracy, then existing law enforcement may very well be inadequate to deal with the situation." Segal, Spivack and Costillo, supra at 88. (Footnote omitted.) In the case at bar, we are not confronted with a situation where the district attorney is attempting to sustain the convening of a special investigating grand jury on a general, conclusory and unsupported statement that in his opinion the ordinary processes of law are inadequate to cope with the problem. The need for the special investigating grand jury was adequately demonstrated throughout the petition. The petition initially states that as a result of a preliminary investigation the district attorney gained knowledge of facts and circumstances which established the existence of corruption, violations of law, serious crimes and systematic depredation by the Pennsylvania State Police officials. After detailing the specific alleged offenses the petition avers that the ordinary processes of law are inadequate in that, without the subpoena power possessed by a special investigating grand jury, certain questions which are essential for a full, fair, complete and probing investigation would remain unanswered. This conclusion is substantiated by a recital that the state police had been and were remaining uncooperative in the relinquishment of information requested by the prosecutorial officials. The petition then concludes with a statement concerning the inadvisability of an internal investigation within the state police itself as a method in which to dispose of the matter. Such a petition clearly satisfies the minimum requisites for the convening of a special investigating grand jury. *Commonwealth ex rel. Camelot Detective Agency v. Specter,* supra, 451 Pa. at 374–75, 303 A.2d at 205–06. *Cf. In re Dauphin County Grand Jury Investigation (No. 1),* 332 Pa. 289, 306–7, 2 A.2d 783, 792 (1938).

The impact of the alleged activities by the state police on the citizens of our State is obvious and is further accentuated by the position of public trust they occupy in the Com-

monwealth. The prosecutor averred, apparently to the satisfaction of the lower court, that the state police were not cooperating with the district attorney in his preliminary investigation. Thus, the information required for a complete investigation could not be forthcoming without the subpoena and contempt powers possessed by a special investigating grand jury.[9] We further agree that to require the state police to investigate themselves, either through an internal investigation or through the regular channels of prosecution would not be a prudent course to pursue in this case. Clearly, the totality of the circumstances presented adequately demonstrates the need for a special investigating grand jury in this case. *In re Investigation of January 1974 Philadelphia County Grand Jury,* 458 Pa. 586, 328 A.2d 485 (1974).

Appellants next contend that the special grand jury was illegally convened because it was not convened to investigate criminal activity. The arguments made by each of the appellants on this point, however, are more properly considered when determining the validity of the informations filed in this case. While it is true that a special investigating grand jury must be convened to investigate criminal activity, we refuse to adopt the hindsight analysis advanced by the appellants. The appellants argue that their actions do not constitute the commission of a crime and therefore the special investigating grand jury was a nullity *ab initio.* Such reasoning is erroneous. For even were we to hold in Part III of this opinion that no crime was in fact committed, such a conclusion would not necessarily affect the validity of the special investigating grand jury but would warrant only the dismissal of the informations. Where there is a reasonable basis to believe that criminal activity has transpired, and the other elements of the test

**9.** As we noted in *Commonwealth v. Field,* supra, 231 Pa.Super. at 59, 331 A.2d at 747: " 'When the grand jury is performing its investigatory function into a general problem area . . . society's interest is best served by a thorough and extensive investigation . . .' *Wood v. Georgia,* 370 U.S. 375, 392, 82 S.Ct. 1364, 1374, 8 L.Ed.2d 569 (1962)."

for the convening of a special investigating grand jury are met, the validity of a special investigating grand jury cannot then be challenged. By its very name the special investigating grand jury is a group whose primary task is the *investigation* of criminal activity. It is not essential that it conclude that crimes have in fact occurred before its investigation can be validated. It need only be convened "to discover" criminal activity. *McNair's Petition, supra,* 324 Pa. at 60–61, 187 A. at 504.

The necessity for this conclusion is clearly illustrated in this case. The section of the crimes code that supports the informations in the case at bar is one where there has been a dearth of cases.[10] The elements of the offense of tampering with public records or information have yet to be construed to any great extent in our Commonwealth. As a consequence, the lower court, district attorney and the special investigating grand jury had very few standards by which to judge the facts in this case. Despite this uncertainty, however, there was, from the first instance, a reasonable basis on which the prosecutorial authorities could conclude that public records or information had been tampered with. This is all that was required for the convening of a valid investigating grand jury.[11] Any attack on the merits as to whether a crime was in fact committed must then be construed as a challenge to the informations which are based on the presentment of the investigating grand jury. It will not be considered as a challenge to the validity of the grand jury itself. We therefore hold that there was a reasonable basis upon which to believe criminal activity had occurred, and as such, the convening of the special investigating grand jury

10. *See Commonwealth v. Mecleary,* 147 Pa.Super. 9, 23 A.2d 224 (1941) which was decided under the Penal Code of March 31, 1860, P.L. 382, § 15, 18 P.S. § 362.

11. As was stated in *McNair's Petition, supra,* 324 Pa. at 62, 187 A. at 505:

"The grand jury must know what crimes it is to investigate. The court of quarter sessions has no power to set such an inquiry into motion *unless it has reasonable cause to believe that an investigation will disclose some criminal misconduct which is within its jurisdiction to punish.*" (Italics added.)

was proper and within the discretion of the lower court. *Commonwealth v. McCloskey,* supra, 443 Pa. at 134, 277 A.2d at 772; *Hamilton Appeal,* 407 Pa. 366, 398, 180 A.2d 782, 797 (1962) (Bell, C. J., dissenting); *In re Philadelphia County Grand Jury,* 347 Pa. 316, 319, 32 A.2d 199, 201 (1943).

## II

Our examination of the informations filed in this case initially reveals that both appellant Barger and appellant Wellendorf are charged with the crime of perjury. As noted above, however, our review on this appeal is limited solely to the issues certified to our Court. We will therefore only consider arguments relating to the crimes of conspiracy and solicitation to tamper with public records or information.[12]

## III

As was noted earlier, appellant Barger is charged with criminal conspiracy to tamper with public records or information and appellant Buchinsky is charged with criminal solicitation and criminal conspiracy to tamper with public records or information. The offense of tampering with public records or information is defined in 18 Pa.C.S. § 4911 as follows:

"(a) Offense defined.—A person commits an offense if he:

(1) knowingly makes a false entry in, or false alteration of, any record, document or thing belonging to, or received or kept by, the government for information or record, or required by law to be kept by others for information of the government;

(2) makes, presents or uses any record, document or thing knowing it to be false, and with intent that it be taken as a genuine part of information or records referred to in paragraph (1) of this subsection; or

(3) intentionally and unlawfully destroys, conceals, removes or otherwise impairs the verity or availability of any such record, document or thing.

12. We will not decide whether appellant Wellendorf's testimony was "material" within the framework of 18 Pa.C.S. § 4902.

(b) Grading—An offense under this section is a misdemeanor of the second degree unless the intent of the actor is to defraud or injure anyone, in which case the offense is a felony of the third degree."

The appellants do not allege on this appeal that the requisite elements of the crimes of criminal conspiracy or criminal solicitation cannot be proven. Rather they direct their attack to the presence of the substantive elements of the crime of tampering with public records or information. In essence, both appellants Barger and Buchinsky contend that, assuming *arguendo* that they did in fact perform the conduct ascribed to them, no crime was committed. In support of this conclusion they contend that the Commissioner of the Pennsylvania State Police has been given the absolute discretion by the Pennsylvania Legislature to promulgate any and all regulations regarding the operations of the Pennsylvania State Police. Implicit within this discretion, they argue, is the power to determine the contents of the State Police Accident Report. Consequently, the appellants conclude that since 18 Pa.C.S. § 4911(a)(3) only prohibits "intentional and unlawful" conduct relating to public records or information, their conduct can in no way be characterized as unlawful since it was performed under authority of law existing at that time. Thus appellant Barger argues that it was within the confines of the law for him to allow the oral directive to be given by appellant Buchinsky which effectively reversed the earlier written regulations of the Pennsylvania State Police.[13] And based upon that premise appellant Buchinsky contends he committed no crime in suggesting that such a change be made, since the change in policy was in all ways lawful.

The Commonwealth contends, however, that Section 1217.1 of the Motor Vehicle Code imposes a duty upon the State Police to furnish a "full report of investigation" of any motor vehicle accident to certain persons or government agencies upon their request; that the oral directive given at the Hershey meeting was in direct contravention of this

13. *See* footnote 1 and accompanying text supra.

legislative mandate and earlier state police regulations; and as a consequence the actions of the appellants "impaired the verity" of the reports within the meaning of 18 Pa.C.S. § 4911(a)(3).

 Turning to our resolution of the merits of these allegations our threshold inquiry must be to first determine whether the accident investigative reports are a "record document or thing" within Section 4911. Initially we note that we cannot find any other jurisdiction, nor has any been brought to our attention, that has adopted the precise statute that has been adopted in our Commonwealth for tampering with public records or information.[14] Nevertheless, it is apparent from the all-inclusive language used by the legislature that the types of reports around which the controversy in this case evolves are to be included within the scope of Section 4911. It is undisputed that the Pennsylvania State Police are an organization within the government of our Commonwealth. In fact, as the Commonwealth aptly notes, appellant Barger, as Commissioner, was a member of the Governor's cabinet. Furthermore, the accident report is clearly a record, document or thing within the meaning of Section 4911(a)(1). It is a written report of an investigation of a motor vehicle accident which, at the very minimum, is kept by the State Police for informational purposes. Furthermore, by the express provision of 75 P.S. § 1217.1[15] the Commissioner is required to furnish a certified copy of this investigation report to any person involved in the accident, his attorney or insurer, and to the Federal government, branches of the military service, agencies of the Commonwealth of Pennsylvania and to officials of counties, cities, boroughs, towns and townships, and to agencies of other states and nations and their political subdivisions. Such

14. 18 Pa.C.S. § 4911 which defines the elements of the crime of tampering with public records or information is derived from the Model Penal Code § 241.8 (Proposed Official Draft 1962).

15. Act of April 29, 1959, P.L. 58, § 1217.1, *added* November 19, 1959, P.L. 1518, § 1, *as amended* October 26, 1967, P.L. 492, No. 239, § 1, 75 P.S. § 1217.1 (1971).

widespread potential distribution of the report [16] and the fact that Section 4911(a)(1) merely requires that the record or document or thing be "kept by" the government for information or record indicates to us that it was the clear intent of the legislature to include such reports within the ambit of this section of the crimes code.[17] Finally, the fact that the report itself is not admissible as evidence in any action for damages or criminal proceedings arising out of a motor vehicle accident does not warrant a contrary conclusion. Such a restriction goes only to the use of the report, it does not affect its status under Section 4911.

▉ Nor do we agree with the appellant's contention that the Commissioner of the State Police had absolute discretion in the matters involved in this case. Appellant Barger would have us hold that Section 711(a) of the Administrative

**16.** It is at this point where the appellant's argument that any impropriety in the deletion or omission of the drinking-information from the narrative section of the accident report is cured by the inclusion of the information in the endorsement must fail. The endorsement cannot be considered as a part of the report since it is not enclosed with the copy of the report that is distributed upon request. The information is consequently of limited availability only within the State Police organization itself. As a practical matter, therefore, it cannot be considered as a part of the accident report within the meaning of 18 Pa.C.S. § 4911.

**17.** Prior statutes that existed from time to time in our Commonwealth appear to have limited the scope of their application to "public records." The present Section 4911 was preceded by the Act of June 24, 1939, P.L. 872, § 323, 18 P.S. § 4323 (1945) which applied only to "public records." *Commonwealth v. Mecleary,* 147 Pa.Super. 9, 23 A.2d 224 (1941) was decided under the Penal Code of March 31, 1860, P.L. 382, § 15, 18 P.S. § 362, which by its express terms applied to "public records . . . of any court or public office of this commonwealth." Likewise, *Ream v. Commonwealth,* 3 S & R 207 (1817), held that the Province Law of November 27, 1700, 1 Sm.L. 4, embraced "every registry or enrolment, directed by law and preserved for the use of the public . . ." *Id.* at 209. It is clear from a reading of Section 4911 that "public records," in the traditional sense, are not the only type of instruments that are protected. Section 4911 extends to records, documents or *things* (1) belonging to the government for information or record; (2) received by the government for information or record; (3) kept by the government for information or record; or (4) records, documents or things required by law to be kept by others for information of the government.

Code of 1929 [18] confers upon the Commissioner the absolute discretion to define exactly what information shall and shall not be included in the accident report. That section reads:

"(a) The Commissioner of Pennsylvania State Police shall be the head and executive officer of the Pennsylvania State Police. He shall provide, for the members of the State Police Force, suitable uniforms, arms, equipment, and, where it is deemed necessary, horses or motor vehicles, and make rules and regulations, subject to the approval of the Governor, prescribing qualifications prerequisite to, or retention of, membership in the force; for the enlistment, training, discipline, and conduct of the members of the force; for the selection and promotion of such members on the basis of merit; for the filing and hearing of charges against such members, *and such other rules and regulations as are deemed necessary for the control and regulation of the State Police Force.* The commissioner shall maintain a training school, to be known as the Pennsylvania State Police Academy, for the proper instruction of members of the State Police Force, which shall be situated at such place or places as the commissioner, with the approval of the Governor, may determine. It shall also be the duty of the commissioner to establish local headquarters in various places, so as best to distribute the force through the various sections of the Commonwealth where they will be most efficient in carrying out the purposes of this or any other act to preserve the peace, prevent and detect crime and to police the highways." (Italics added.)

We do not agree with appellant Barger's interpretation of this section. It is clear that the Commissioner is given the power under Section 711(a) to promulgate rules and regulations which are deemed necessary for the "control and regulation" of the State Police Force. However, we do not interpret this clause as conferring upon the Commissioner of the State Police absolute authority in matters which by their

18. Act of April 9, 1929, P.L. 177, art. VII, § 711, *as amended* 71 P.S. § 251 (Supp.1977--78).

very nature are peripheral to the control and regulation of the State Police Force itself. Clearly, under Section 711 the Commissioner of the State Police has the power to promulgate rules and regulations relating to the equipping, enlistment, training, discipline, conduct, merit selection and promotion of troopers. Such areas are an integral part of the very operation of the State Police Force. Each topic involves aspects of the state police organization which are clearly within the "control and regulation" of the force itself. We fail to see, however, how a regulation requiring the deletion of information from an accident report that a state trooper might have been drinking while on duty involves an area which is essential to the "control and regulation" of the State Police Force. While we may assume that the Commissioner does have the power to formulate the contents of the accident report, since that area is incident to the operation of the organization, we are not prepared to say that he has unbridled discretion in the matter, as he may or may not have in the other areas enumerated in Section 711(a). The full extent of the Commissioner's powers in these other areas is not an issue before us. However, we do believe that any discretion that he does have concerning the composition of the accident reports must be read in light of other legislation and constitutional considerations.

Section 1217.1 of the Motor Vehicle Code [19] provides that the Commissioner of the State Police shall, upon request, provide a "full report of investigation" to the parties listed in the section. It further states that the Commissioner may refuse to furnish such "complete copy of investigation" of the vehicle accident whenever there are criminal charges pending against any persons involved in the accident. Section 1217.1 does not define what constitutes a "full report." The appellants argue that through the failure of the legislature to define "full report" the legislature has in effect delegated that duty to the discretion of the Commissioner. We do not agree. We believe that a "full report" necessarily and logically implies the inclusion of all informa-

19. See footnote 17 supra.

tion that is material and relevant to the investigation. This conclusion is buttressed by the fact that prior to the 1967 amendment only an abstract was supplied to a person requesting a report of the investigation. The abstract was limited to the date, time, location, weather conditions, names and addresses of operators, passengers and witnesses, and a description of the accident involved. We agree with the Commonwealth that the 1967 amendment's use of the words "full report" rather than retaining the limited abstract language of the old section implies an intent on the part of the legislature that *more* information be given than was allowed prior to October 26, 1967. Evidence of the intoxication of a driver, whether it is a state police trooper or an ordinary citizen, is undoubtedly a material element when an investigation of a motor vehicle accident is undertaken. Recognition of this factor was undoubtedly the impetus for the issuance of Special Order 73-193 which required that drinking information be included in the accident report. The oral directive issued at Hershey, however, not only appears to have created a discriminatory double standard which bears no direct relationship to the control and regulation of the state police force but also violates the requirement of Section 1217.1 that a full report be distributed upon request.

■ Lastly, there remains the issue as to whether or not the conduct of the appellants was such that the verity of the reports was impaired. The Commonwealth argues that the intentional deletion of drinking information from the accident reports dealing with members of the State Police and the inclusion of such information in every other accident report dealing with ordinary citizens, pursuant to Operations Manual 7-2 and Special Order 73-193 which remained operative in such a situation, impaired the verity of the reports from which the drinking information was deleted or omitted. Such reasoning does not go far enough. As noted earlier, the drinking information was in fact contained in a detachable endorsement. All material and relevant information was, therefore, available within the state police force itself.

However, the endorsement was not part of the report that was distributed to a requesting party.[20] Consequently, it was not until the distribution of the report, minus the endorsement, that the actions of the appellants resulted in an impairment of the reports' verity. The effect of the oral regulation must be considered in light of the fact that the report was not limited in use to the state police force but was distributed to other persons and agencies upon request, and was incomplete when distributed to persons whom the state police knew would rely on the report as a complete statement of all relevant and material facts concerning the accident.

Our review on this interlocutory appeal has been limited to the precise questions certified to our Court and argued by the parties in their briefs. For the purposes of this appeal we have assumed as true all evidence presented to us. It remains incumbent upon the State to prove all essential elements of the alleged crimes beyond a reasonable doubt. Furthermore, nothing in this opinion should be construed as an expression by this Court on any possible defense that may be raised by the appellants should this case proceed to trial.

The orders of the lower court refusing to dismiss the informations are affirmed and the cases are remanded for further proceedings.

**20.** *See* footnote 16 supra.