## Derabasse v. Bedford Borough

*John Woodcock, Jr.,* for plaintiff.
*John B. Koontz,* for defendants.

VAN HORN, *P.J.,* May 8, 1981—This case is before us on preliminary objections filed by defendants to plaintiff's complaint.

The complaint sets forth that on January 30, 1979 plaintiff's minor son was involved in an accident while he was operating a motor vehicle owned by plaintiff; that the accident was investigated by defendant, William Lee Sallada, a patrolman employed by defendant, Borough of Bedford; that a Pennsylvania Department of Transportation Police Accident Report prepared by Officer Sallada contained certain erroneous information; and that when plaintiff requested officials of defendant borough and its police department to correct the erroneous report, his request was refused. The complaint further alleges that by reason of the erroneous report plaintiff has sustained damages in the following respects: (1) the liability insurance carrier for the operator of the other vehicle involved in the accident has refused to make a settlement with

plaintiff for the damages to his vehicle; (2) a demand has been made on plaintiff to pay the damages to the other vehicle, placing him in a position where he must defend a lawsuit; (3) plaintiff's insurance premiums have been increased; and (4) plaintiff has suffered embarrassment and adverse publicity.

Defendants' preliminary objections are in the nature of a demurrer and raise three contentions: (1) that the complaint does not set forth a cause of action recognized under common law or created by any statute of this Commonwealth; (2) that plaintiff's claims are barred by the doctrine of governmental immunity under the Political Subdivision Tort Claims Act of November 26, 1978, P.L. 1399, 53 P.S. §5311.101 et seq.; and (3) that plaintiff's complaint is defective because it does not aver compliance with the notice requirements set forth in section 504 of said act, 53 P.S. §5311.504.

A demurrer by a defendant admits all relevant facts sufficiently pleaded in the complaint, and all inferences fairly deducible therefrom. The decision must be based on the complaint alone, and the demurrer will not be sustained merely because the complaint lacks specificity. Where a doubt exists as to whether or not summary judgment should be entered, the doubt should be resolved in favor of refusing to enter it. Thus, with respect to the entry of summary judgment on demurrer, the question to be decided is not whether plaintiff has pleaded his cause of action so clearly in both form and specification as to entitle him to proceed to trial without amending his complaint, but whether, upon the facts averred, it can be concluded with certainty that the law will not afford plaintiff the relief he seeks: 2 Goodrich-Amram 2d §1017(b):11.

Our study of the complaint in this case convinces us that, on the facts alleged therein, plaintiff's only possible cause of action is one based upon the publication of injurious falsehood, a tort defined in section 623A of the Restatement, 2d, Torts, as follows:

"Liability for Publication of Injurious Falsehood—General Principle    One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a)  he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b)  he knows that the statement is false or acts in reckless disregard of its truth or falsity"

The action for injurious falsehood is similar to the action for defamation, and the rules on absolute privilege to publish defamatory matter apply to the publication of an injurious falsehood: Restatement, 2d, Torts, §635. In other words, whenever there is a privilege to publish statements that are both false and defamatory, there must be a privilege to publish those that are false but not defamatory.

The absolute privilege afforded witnesses to publish defamatory matter in judicial proceedings is well recognized: Restatement, 2d, Torts, §588. Consequently, no civil action can be brought to recover damages from a witness who has given merely false testimony: Ginsburg v. Halpern, 383 Pa. 178, 118 A. 2d 201 (1955). The absolute privilege also has been recognized with respect to publications made by governmental officers in connection with the performance of their official duties: Restatement, 2d, Torts, §591. And, at least insofar as officers of the United States are con-

cerned, it has been held that false statements made in the performance of their official duties will not give rise to civil tort liability, no matter how inferior the positions or duties of the officers may be: Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335 (1959).

The testimonial privilege is recognized because a right of action for giving false testimony could be employed as a means of intimidating witnesses, whereas the penalty for perjury is regarded as an adequate deterrent. In Barr v. Matteo, supra, Mr. Justice Harlan adverted to similar considerations as justification for extending an absolute privilege to all governmental officials with respect to non-testimonial publications incidental to the performance of their duties, citing the eminent Judge Learned Hand at pp. 571-72:

"'It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who

have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. . . .' Gregoire v. Biddle, 177 F. 2d 579, 581."

In the case before us section 3751 of our Vehicle Code, 75 Pa. C.S.A. § 3751, imposed a duty upon Officer Sallada to prepare a report of his investigation, on a form approved by the Department of Transportation, and to submit the same to the Department. While the primary purpose of the report was to provide data for accident analysis, it must be recognized that copies of the report easily could be obtained by others, including the insurance carriers of the parties involved in the accident. An adverse report no doubt placed plaintiff in a disadvantageous position vis-a-vis the other party; and if the report, in fact, was erroneous, plaintiff may have been wronged thereby as he contends. Nevertheless, we have concluded that such wrong as plaintiff may have sustained is one for which the law permits him no redress.

Plaintiff does not, nor can he, assert that the accident report contained statements which defamed him. He contends only that the report was factually incorrect in such particulars as the location of the accident, the nature and extent of the damages, etc. We hold that in this Commonwealth a civil action will not lie against a police officer to obtain money damages for harm allegedly sustained because of

nondefamatory, factually erroneous statements in an accident report, prepared by the officer pursuant to the requirements of the Vehicle Code, regardless of whether the statements complained of were negligently, intentionally, wilfully, or maliciously made.

We reach our conclusion for three reasons: First, the findings of a police officer who investigates a motor vehicle accident frequently will be at variance with the views of the party or parties involved in the accident. Public policy dictates that the officer should be free to fulfill his statutory duty without fear of reprisal. Second, it is provided by law that the accident report shall not be admissible as evidence in any action for damages or criminal proceeding arising out of the accident: 75 Pa.C.S.A. §3752(b). This prohibition sufficiently mitigates any potential for harm posed by an erroneous report. Third, a police officer may not prepare false accident reports with impunity. The reports are public records; consequently, fraudulent practices with respect thereto can give rise to prosecution under section 4911 of our Crimes Code: 18 Pa.C.S.A. §4911 (Tampering with public records or information); Com. v. Barger, 249 Pa. Superior Ct. 59, 375 A. 2d 756 (1977).

From our finding that plaintiff's complaint fails to state a cause of action against Officer Sallada, it necessarily follows that it also fails to state a cause of action against his employer, the Borough of Bedford, inasmuch as the employer's liability is governed by the principle of respondeat superior. Moreover, the borough is fully protected from suit under the doctrine of governmental immunity in any event. The preparation of accident reports is not one of the areas for the imposition of tort liability recognized by the Political Subdivision Tort

Claims Act, 53 P.S. §5311.202(b)(1) to (8) incl. Except in the eight areas specified, section 301 of the act grants a police officer the same immunity with respect to suits grounded upon his negligence as that enjoyed by the political subdivision employing him. However, were an officer to act fraudulently, maliciously, and/or criminally in the preparation of an accident report, the protection otherwise given him pursuant to section 301 would be lost by reason of the provisions of section 202(a)(2) and 307 of the act. Therefore, defendants' second preliminary objection has validity only insofar as the Borough of Bedford is concerned.

There is no merit to the third of defendants' preliminary objections. Failure to comply with the 180 day notice requirement is an affirmative defense. As such it must be pleaded as new matter and cannot be raised by preliminary objection: Zack v. Saxonburg Borough, 386 Pa. 463, 126 A. 2d 753 (1956).

Wherefore, we enter the following

### ORDER

And now, May 8, 1981, the order of the court is as follows:

1. The third of defendants' preliminary objections to plaintiff's complaint is overruled.

2. The second of defendants' preliminary objections is sustained insofar as plaintiff's claim against defendant, Borough of Bedford, is concerned, and overruled with respect to defendant, William Lee Sallada.

3. The first of defendants' preliminary objections is sustained with respect to plaintiff's claim against both defendants.

4. Plaintiff's complaint is hereby dismissed as to both defendants.